. RUSSELL P. LeBLANC *vs.* COMMONWEALTH.

Suffolk.   December 5, 1972. — February 27, 1973.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Constitutional Law,* Fair trial, Confrontation of witnesses.   *Error, Writ of.   Homicide.   Error,* Whether error harmful.

The general rule that a writ of error cannot be used by the defendant in a criminal case to review issues that could have been raised at his trial and thereafter on appeal to this court does not bar him from raising by writ of error claims whose constitutional significance was not established until after his trial and appeal. [173–174]

Where the petitioner in a proceeding on writ of error was convicted of first degree murder at a trial at which a guilty plea of a codefendant at a prior hearing, while not represented by counsel, was admitted in evidence, and a conviction of the codefendant was reversed for that reason by the United States Supreme Court, the possibility of a miscarriage of justice required the Supreme Judicial Court to consider the merits of the petitioner's claim, especially where the petitioner's guilt rested in part on whether his codefendant was guilty. [174]

Where the petitioner in a proceeding on writ of error and two codefendants were convicted of first degree murder on the basis of evidence that they had conspired to commit a robbery in a certain house, that they all drove there in an automobile, that

the codefendants entered the house with masks on and with loaded pistols, that an occupant was shot and killed by one of the codefendants, and that the petitioner, who had remained in the automobile, was arrested nearby shortly after the shooting, and a guilty plea of one of the codefendants at a prior hearing, while not represented by counsel, was admitted in evidence at the murder trial, at which the petitioner's defence was abandonment of the enterprise, it was held that properly admitted evidence of the petitioner's guilt was so overwhelming, and the prejudicial effect of the codefendant's guilty plea was so insignificant by comparison, that it was clear beyond a reasonable doubt that the improper admission of the guilty plea was harmless error.  [174–178]


PETITION filed in the Supreme Judicial Court for the county of Suffolk on November 13, 1968.

The case was reserved and reported by *Braucher, J.*

*Klari Neuwelt* (*Alexander Whiteside, II*, with her) for the petitioner.

*Bernard Manning*, Assistant Attorney General, for the Commonwealth.


TAURO, C.J.   This petition for a writ of error relates to the 1955 convictions considered by this court in *Commonwealth* v. *Devlin*, 335 Mass. 555.   In that case on March 20, 1957, we affirmed the convictions of LeBlanc and his two codefendants, Arsenault and Devlin, for the first degree murder of Merrill Lovinger.

On April 29, 1963, the Supreme Court in *White* v. *Maryland*, 373 U. S. 59, held that it was constitutional error to permit the admission in evidence of a guilty plea made at a prior arraignment where the defendant did not have the assistance of counsel.   Following this decision, LeBlanc's codefendant Arsenault, in a writ of error before this court, alleged that the trial judge "erred in receiving in evidence the fact that . . . [Arsenault] had pleaded guilty to the charge on trial. in the Newton District Court while unrepresented by counsel."   This court concluded that *White* v. *Maryland, supra,* had no retroactive effect and accordingly affirmed judgment. *Arsenault* v. *Commonwealth*, 353 Mass. 575.   Our decision was reversed by the Supreme Court on October 14,

1968, in *Arsenault* v. *Massachusetts*, 393 U.S. 5,[1] on the ground that *White* v. *Maryland* had retroactive effect.

On November 13, 1968, the petitioner filed this petition for writ of error in which he alleges that the admission of Arsenault's guilty plea at their joint trial deprived him of a fair trial and violated his constitutional right to confront witnesses against him guaranteed by both the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. On October 7, 1972, a single justice of this court reserved and reported the case without decision on the petition, the assignments of error, the Superior Court return, the respondent's answer, the stipulation of facts, and the trial transcript of *Commonwealth* v. *Devlin*, 335 Mass. 555, for the determination of the full court.

Before reaching the substantive merits of the petitioner's claims, we must first decide whether the issues raised in this petition can be presented by a writ of error. The Commonwealth argues that LeBlanc's failure during the trial to object to the admission of Chief Purcell's testimony that Arsenault had pleaded guilty in Newton District Court to Merrill Lovinger's murder and the petitioner's subsequent failure to press this issue on direct appeal to this court prevent him from raising this claim years later in a writ of error.

The Commonwealth relies on *Cortellesso* v. *Commonwealth*, 354 Mass. 514, where we held that a writ of error cannot be used to review issues that could have been raised at trial and thereafter on appeal. "The rule that a writ of error is not available to review such issues is founded in the high public interest in an end to litigation and the trial of issues when and where they can be properly and fully tried." Pp. 517–518.

However, we hold that the *Cortellesso* rule does not bar the petitioner from raising claims whose constitutional significance was not established until after the petition-

---

[1] Arsenault received a new trial in 1970 in which he was again convicted of first degree murder. We affirmed this judgment in *Commonwealth* v. *Arsenault*, 361 Mass. 287.

er's trial and appeal to this court.  Moreover, in light of the Supreme Court's decision to reverse the codefendant's conviction because of the improper admission in evidence of his guilty plea at a prior hearing, we must reach the merits of the petitioner's claim to insure that there has been no substantial miscarriage of justice.  See *Commonwealth* v. *Freeman*, 352 Mass. 556, 564.  If the petitioner's case was in fact seriously prejudiced by the admission of his codefendant's constitutionally infirm plea, it would be an injustice to affirm the petitioner's conviction merely because of his trial counsel's failure to object to the plea's admission at trial, especially where the petitioner's guilt rests in part on whether his codefendant was guilty.  See *Commonwealth* v. *McCarthy*, 348 Mass. 7, 14–15.

The petitioner claims that the admission of Arsenault's initial guilty plea at their joint trial raises a confrontation problem.  He urges that his right to confrontation was denied despite the fact that Arsenault took the witness stand and testified in detail concerning the events immediately preceding and following the fatal shooting of Lovinger.  The confrontation claim rests on Arsenault's professed inability to remember pleading guilty and that his memory failure prevented LeBlanc's attorney from cross-examining him on the circumstances surrounding the plea.  However, we need not decide this issue because we think the question central to the petitioner's appeal is whether, as to LeBlanc, the erroneous admission of Arsenault's constitutionally tainted guilty plea at their joint trial was harmless error beyond a reasonable doubt.

The evidence introduced at the 1955 trial revealed the following pertinent facts.[2]  The three defendants, Arsenault, Devlin and LeBlanc became acquainted while working at different times in a lunch room in Waltham. On October 23, 1954, Devlin and Arsenault visited a gun dealer in New Hampshire and Devlin purchased a .45

---

[2] For a more complete and detailed summary of the evidence, see *Commonwealth* v. *Devlin*, 335 Mass. 555, 559–563.

calibre Colt automatic pistol stating that his name was Arthur Johnson. A week later Arsenault and Devlin returned to the same gun dealer and Arsenault purchased a .45 calibre Colt automatic under another assumed name. Thereafter, Devlin kept possession of the two guns at his home in Waltham. It appears that Arsenault left the Commonwealth for a few months. On or about February 1, 1955, Arsenault called Devlin by telephone and told him he was on his way home. "He arrived at Devlin's home on the evening of February 3. On the following morning, Friday, February 4, Devlin and LeBlanc went to Watertown and bought two pairs of brown cotton gloves, a hat and a length of clothes line. They drove in LeBlanc's automobile to Newton and LeBlanc pointed out a house at number 341 Waverley Avenue as the home of one Carl Silverman, a man who, he had told Devlin, was a wealthy dress manufacturer and was likely to be carrying a substantial amount of money on Fridays." *Commonwealth* v. *Devlin*, 335 Mass. 555, 559–560. About 6 P.M. the three defendants left for Newton in LeBlanc's car. On reaching Waverley Avenue, Arsenault and Devlin pulled silk stockings over their faces, took out their guns, and instructed LeBlanc to drive by the intended victim's house every ten minutes. Devlin lent a watch to LeBlanc so he could check the time. During the course of an abortive armed robbery attempt at 341 Waverley Avenue, Arsenault shot and killed Merrill Lovinger. Arsenault and Devlin fled the house on foot but were soon apprehended by police. LeBlanc was arrested about 7:30 P.M.[3] that same evening while parked without lights on Waverley Avenue a short distance from the scene of the shooting.

The principal defence of all three defendants was that they had abandoned their criminal undertaking before the attempted armed robbery. Since the petitioner

---

[3] LeBlanc testified that after dropping off Arsenault and Devlin at the scene of the crime, he drove a few miles to a store to buy some gum and then drove to a gas station. After leaving the gas station, LeBlanc testified that he went back to Waverley Avenue out of curiosity to see what had happened.

LeBlanc was the driver of the "getaway car" and was not present at the scene of the killing, his guilt rested on the Commonwealth's proof that Arsenault shot and killed Merrill Lovinger while attempting a robbery in which the petitioner LeBlanc was also engaged, thereby making LeBlanc equally responsible for Arsenault's acts. See *Commonwealth* v. *Devlin*, 335 Mass. 555, 567. Thus, the Commonwealth had to prove beyond a reasonable doubt that at the time of the shooting, *both* Arsenault and LeBlanc were engaged in a criminal undertaking involving a felony which carried a penalty of death or life imprisonment.

The Commonwealth could not convict LeBlanc of a felony murder if the gunman himself (Arsenault) had succeeded in proving abandonment of the contemplated robbery before the shooting. The admission at the trial of the three codefendants of Arsenault's guilty plea to a charge of attempted armed robbery and murder was prejudicial to LeBlanc's defence to the extent that it rested on Arsenault's defence of abandonment.

However, there was overwhelming untainted evidence from Arsenault's and Devlin's own trial testimony and their statements to the police that would lead a jury to conclude beyond a reasonable doubt that there was no merit to Arsenault's abandonment defence. In *Commonwealth* v. *Green*, 302 Mass. 547, 555, this court discussed the necessary elements of a successful abandonment defence. "To end an attempted robbery, where the robbers remain in freedom and possessed of a deadly weapon at the place of the attempted robbery until a fatal shooting takes place, there must be at least an appreciable interval between the alleged termination and the fatal shooting, a detachment from the enterprise before the shooting has become so probable that it cannot reasonably be stayed, and such notice or definite act of detachment that other principals in the attempted crime have opportunity also to abandon it." Our reading of the transcript reveals no evidence of any appreciable interval between the alleged termination of the criminal enterprise and the shooting.

Even if the jury believed Arsenault's testimony that he was trying to leave the house when the shooting occurred, they would still be justified in rejecting his abandonment defence.[4]  See *Commonwealth* v. *Lussier*, 333 Mass. 83, 90–91, citing our holding in the *Green* case, *supra*, that "the occurrence which is properly described as an attempted robbery was not ended merely because one or both of the robbers ceased to desire to proceed, had in mind only a purpose to escape, and shot in the furtherance of that purpose."  The jury had before them overwhelming evidence that the shooting was incidental to and a natural and probable consequence of the attempted robbery.  We conclude beyond a reasonable doubt that the "minds of an average jury" would not have found the Commonwealth's case significantly less persuasive had the testimony as to Arsenault's original guilty plea been excluded.  *Schneble* v. *Florida*, 405 U. S. 427, 432.  At the second trial the jury again convicted Arsenault of first degree murder.[5]

Moreover, a careful reading of the trial transcript reveals that the petitioner's chief defence was that, regard-

---

[4] In fact, there was evidence that Arsenault had not even abandoned his intent to rob *after* entering the house.  Arsenault told the police that after entering the house, he told one of its occupants, "Stop your screaming, lady, I am not going to hurt you.  All I want is money." *Commonwealth* v. *Devlin*, 335 Mass. 555, 565.

[5] It should be noted that the harmless error doctrine was not applicable in Arsenault's appeal to the United States Supreme Court on grounds of denial of effective counsel when he pleaded guilty at his arraignment.  The Supreme Court noted in both *Hamilton* v. *Alabama*, 368 U. S. 52, 55, and *White* v. *Maryland*, 373 U. S. 59, 60, that the rationale of its holding that presence of counsel is needed to plead intelligently does not rest on a showing of actual prejudice to the defendant's case.  "When one pleads to a capital charge without benefit of counsel, we do not stop to determine whether prejudice resulted. . . . [T]he degree of prejudice can never be known.  Only the presence of counsel could have enabled this accused to know all the defenses available to him and to plead intelligently." *Hamilton, supra*, 55.  Thus, the Supreme Court could not apply the harmless error test to Arsenault's appeal once it was established that he had pleaded guilty without the assistance of counsel.  However, the petitioner's writ of error does not rest on the ground of absence of effective assistance of counsel.  Instead, he claims the admission of Arsenault's guilty plea was so prejudicial to his defence as to create a fundamentally unfair trial in violation of his right to due process and his Sixth Amendment right to confront the witnesses against him.  Neither of these alleged constitutional defects precludes us from affirming the petitioner's conviction if we find they were harmless beyond a reasonable doubt.

less of whether Arsenault and Devlin had abandoned the criminal enterprise before the shooting, LeBlanc had abandoned the undertaking as soon as his codefendants had left his car. This defence was not prejudiced by the admission of Arsenault's guilty plea because its success did not rest on Arsenault's innocence but rather on LeBlanc's credibility when he testified that he did not know of his codefendants' scheme until they reached the scene of the robbery and that he abandoned the enterprise as soon as the others left his car. There was overwhelming untainted direct evidence from the codefendants' statements to the police and from their trial testimony that LeBlanc was seriously involved in this criminal undertaking from its inception.

The remaining question is posed by LeBlanc's claim that he abandoned the enterprise after his two codefendants left the car. In the circumstances, it is difficult to find fault with the jury's apparent disbelief of this testimony. Moreover, it can hardly be argued with any degree of logic and common sense that LeBlanc's credibility in this regard was prejudiced by the admission of Arsenault's guilty plea. The codefendants' plea of guilty could not possibly have been considered by the jury on the factual issue of whether LeBlanc had, in his own mind, decided to abandon the robbery attempt.

Our review of the record, including the voluminous trial transcript, leads us to conclude that "the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the co-defendant's [guilty plea] is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper . . . [admission of the guilty plea] was harmless error." *Schneble* v. *Florida*, 405 U. S. 427, 430. See *Milton* v. *Wainwright*, 407 U. S. 371, 377.

*Judgment affirmed.*