Thomas F. McINERNEY, Petitioner,

v.

Louis BERMAN et al., Respondents.

Civ. A. No. 78–1159–S.

United States District Court,
D. Massachusetts.

June 27, 1979.

Norman S. Zalkind, Zalkind & Zalkind, Boston, Mass., Stephen L. Saltonstall, Mass.

Correctional Legal Services, Boston, Mass., for petitioner.

Robert S. Potters, Asst. Atty. Gen., Boston, Mass., for respondents.

## MEMORANDUM AND ORDER

·SKINNER, District Judge.

In this petition for a writ of habeas corpus the petitioner alleges that his constitutional right to due process has been violated in his conviction of murder in the second degree in the Massachusetts Superior Court. Specifically, he claims that the trial judge's charge to the jury impermissibly shifted to him the burden of disproving malice aforethought, an essential element of the crime of murder in the second degree as defined by Massachusetts courts. This claim requires once again the careful differentiation between presumptions and inferences and an analysis of the effect of each on the prosecution's burden of proof of every element of the crime charged. *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

 Since there has been inconsistent use of terms by various courts, I will start by defining the terms that I will use.

1. *Conclusive presumption.* An ultimate fact is presumed to be true upon proof of another fact, and no evidence, no matter how persuasive, can rebut it. An example is the presumption that a child of less than a specified age is unable to consent to sexual intercourse.

2. *Mandatory presumption.* A jury is required to find an ultimate fact to be true upon proof of another fact unless they are otherwise persuaded by a preponderance of evidence offered in rebuttal.

3. *Inference* (sometimes called permissive presumption). A jury may find an ultimate fact to be true upon proof of another fact if upon consideration of all the circumstances revealed by

the evidence they are satisfied that in logic and common experience the ultimate fact is more likely than not to follow from the fact proved.[1a]

 A mandatory presumption that a necessary element of a crime has been proved by proof of another fact impermissibly shifts the burden of proof to the defendant by requiring him to rebut the presumption by at least a preponderance of the evidence. Such a presumption violates the rule announced in *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

 An inference of a necessary element of a crime from proof of another fact does not violate a defendant's constitutional rights if (1) the underlying fact is proved beyond a reasonable doubt, (2) the ultimate element of the crime is rationally related to the underlying fact, and (3) the burden remains on the prosecution to satisfy the finder of fact on the whole record as to every element of the crime charged beyond a reasonable doubt. *County Court of Ulster County, New York v. Allen*, —— U.S. ——, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). Whatever the state's general rule may be, moreover, it is to be tested on federal habeas corpus as applied in the particular case. *County Court of Ulster County, New York v. Allen, supra*, —— U.S. at ——, 99 S.Ct. 2213.

 The conviction in this case was appealed to the Supreme Judicial Court, which affirmed the conviction. The facts are set out in the opinion, 373 Mass. 136, 365 N.E.2d 815, 817 (1977). In affirming the conviction, the Supreme Judicial Court articulated a rule governing the inference of malice from the fact of an intentional killing which may not completely avoid the proscription established by *Mullaney v. Wilbur, supra*. While the inference is said to

**1a.** *See County Court of Ulster County, New York v. Allen*, —— U.S. ——, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

be permissive, the Court reiterated its holding in *Commonwealth v. Gagne,* 367 Mass. 519, 326 N.E.2d 907, 909 (1975):

> It does not necessarily follow, however, that where there is *any* evidence of mitigating circumstances, the inference of malice is rebutted. [Emphasis in original.]

The meaning of this language is not entirely clear to me, but if it implies a burden on the defendant of overcoming the inference by a preponderance of the evidence it runs afoul of *Mullaney v. Wilbur.* I need not decide that question, because what is critical here is the rule articulated by the trial judge. The trial judge's instructions are consistent with due process if they meet the standard approved in *County Court of Ulster County, New York v. Allen, supra,* ——— U.S. at ———, 99 S.Ct. at 2227:

> In short, the instructions plainly directed the jury to consider all the circumstances tending to support or contradict the inference that all four occupants of the car had possession of the two loaded handguns and to decide the matter for itself without regard to how much evidence the defendants introduced.

The relevant parts of the instructions are attached as Appendix A. The problem which brings this case here is that while the trial judge in general used language fairly describing a permissive inference and left the question of acceptance or rejection to the jury upon consideration of all the circumstances, he also used some phrases usually associated with mandatory presumptions.

Our Circuit has been very sensitive to any suggestion that the burden of proof has been in any way shifted to a defendant, *e. g., United States v. Harrigan,* 586 F.2d 860 (1st Cir. 1978). In that case, my instruction to the jury was as follows:

> The burden in this trial, as in every criminal trial, is upon the Government to es-

tablish the guilt of the defendant by proof beyond a reasonable doubt. That is the reason why I made the comment during the argument that the defendant's evidence has no greater function than simply to raise a reasonable doubt in your minds, if it does. The defendant is not required to go any further.

The Court of Appeals stated that "There is no question" that the second quoted sentence was error. The point was apparently conceded by the government, and the reason for the holding was not explained by the Court. If "function" is taken in the sense of "use" or "purpose," it is still my opinion that the instruction was correct, and did not shift any burden to the defendant.[1b] I surmise therefore that the Court of Appeals was concerned lest the jury interpret the word "function" as implying "duty" or "obligation," a connotation which it might indeed carry in some contexts. *Webster's Third New International Dictionary,* G. & C. Merriam Company, 1971.

The position of the offending language at the beginning of the instructions and the attention directed to it by previous colloquy between court and counsel in the presence of the jury caused the Court of Appeals to consider the error not harmless and not cured by the other concededly correct instructions on the same subject.

It is with the meticulous concern exemplified by *Harrigan,* that I must measure the instructions in this case against the standards of *Mullaney v. Wilbur, supra,* and *County Court of Ulster County, New York v. Allen, supra.*

The instruction must be read from the point of view of a juror.[2] Words such as "presumption," which for the lawyer may conjure up the dour shade of *Commonwealth v. York,* 9 Metc. (50 Mass.) 93 (1845), will not have the same effect on a jury. "Presumption" was never defined by the trial judge and never distinguished from

---

**1b.** The Court of Appeals also itself characterized the evidence introduced by the defendant as "calculated to raise a question of reasonable doubt in the minds of the jury." 586 F.2d at 864.

**2.** *Sandstrom v. State of Montana,* ——— U.S. ———, ———, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

"inference." "Inference" was specifically defined in permissive terms.

Near the beginning of the instructions, the trial judge, after describing the Commonwealth's burden of proof, asked himself, "What is the burden that rests upon the defendant in this case, Mr. McInerney?" And he answered, "The answer is simple—absolutely none." (Tr. 9–85). This point is repeated at Tr. 9–86, and in the supplemental instructions at Tr. 9–130. At many points throughout the instructions the trial judge emphasized the burden on the Commonwealth of proving every element of the crime, including malice, beyond a reasonable doubt.

Every reference to the inference of malice was in permissive terms. The jury was repeatedly directed to look at all the circumstances which precede or attend a killing in determining whether malice existed. The defendant presented no evidence. 365 N.E.2d at 824. The circumstances referred to were necessarily those revealed by the Commonwealth's evidence.

The language which requires the most careful scrutiny occurs in the passages of the instructions in which the trial judge refers to "circumstances which will rebut the presumption of malice and reduce the character of that unlawful killing from murder to manslaughter . . ." (Tr. 9–92, 9–95, 96). Again, on two occasions, the trial judge said that malice may be inferred, "unless by the circumstances the jury considers that it has been disproved." These phrases, standing alone, would in my opinion be very likely to leave a jury with the impression that if an unlawful and intentional killing (or the use of a dangerous weapon) were proved, the inference of malice would stand unless overcome by proof at some quantifiable level. In these instructions, however, this language is buried in repeated, careful and exemplary descriptions of a permissive inference. In the context of this case, moreover, wherein the defendant offered no evidence at all, the fair reading of the instructions is that the "disproof" is to be found in the government's evidence. No burden is thus placed on the defendant.[3]

I am satisfied that the charge read as a whole,[4] fairly presented the jury with a choice to either accept or reject an inference of malice upon proof of an unlawful, intentional killing after considering all of the circumstances revealed by the Commonwealth's evidence. It expressly relieved the defendant of any burden of proof, in marked contrast to the instructions denounced in *Mullaney v. Wilbur, supra,* as set out in *Wilbur v. Robbins,* 349 F.Supp. 149, 151 (D.Maine 1972), and the instructions in *Sandstrom v. State of Montana,* —— U.S. ——, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).[5] It consistently emphasized the Commonwealth's burden of proof beyond a reasonable doubt.

It remains for me to consider whether there is a rational connection between the proof of an unlawful, intentional homicide and the inference of malice; *i. e.* is it more likely than not that an unlawful, intentional homicide would be accompanied by malice? *County Court of Ulster County, New York v. Allen, supra.* Judge Gignoux apparently thought not, *Wilbur v. Robbins, supra,* at 153–4, but it is not clear whether he was dealing with inferences or mandatory presumptions, with intentional homicides in general or with unlawful intentional homicides.

The trial judge had limited his discussion at the outset to unlawful intentional homicides. An inference of malice in such cases seems to me to be perfectly rational, and,

---

**3.** Judge Friendly's off-hand comment to the contrary in *United States v. Barash,* 365 F.2d 395 (2d Cir. 1966), was made in a case in which the defendant offered considerable testimony which would tend to rebut an inference of criminal intent.

**4.** *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).

**5.** I have reread the instructions in view of the reference in *Sandstrom* to the *possibility* that a "reasonable juror" could have understood the language to have a constitutionally impermissible meaning. Given a "reasonable" definition of "reasonable juror," I believe these instructions still pass the constitutional test.

while I have no statistical analysis at hand, perfectly consistent with common experience. We are, moreover, dealing "with a traditional common-law inference deeply rooted in our law." *Barnes v. United States*, 412 U.S. 837, 843, 93 S.Ct. 2357, 2362, 37 L.Ed.2d 380 (1973); *Mullaney v. Wilbur, supra*, 421 U.S. at 692–6, also p. 702, n.31, 95 S.Ct. 1881.

I conclude therefore that the challenged instructions did not violate the petitioner's constitutional right to due process. Accordingly, the petition for writ of habeas corpus is DENIED. Judgment of dismissal to enter.

## APPENDIX A

### PORTIONS OF JURY INSTRUCTIONS

There are inferences which you may draw. You may, from having found one or more facts, decide that, "Since this fact or these facts exist, then logically I am also compelled to find another fact." So long as your inference is logical and reasonable, you may make an inference and you may use that inference as the basis for a finding of fact.

(Tr. 9–77)

What is the burden that rests upon the defendant in this case, Mr. McInerney? The answer is simple—absolutely none. Mr. McInerney may stand mute, if he wishes. He has no obligation to produce any testimony in the case at all. He has no obligation to take the witness stand. He had no obligation to make a statement to you after the arguments had concluded. The Constitution of the United States and the Constitution of this commonwealth states that no one shall take the witness stand in a criminal trial unless he chooses to do so and states that he chooses to do so. The fact that one does not take the witness stand in a criminal trial in which he is the defendant shall not give rise to any inference of guilt so far as the defendant is concerned because the defendant is entitled to rely upon the prosecutor or the commonwealth carrying its own burden. So please remember that so far as the defendant is concerned, there is no burden which rests upon him.

(Tr. 9–85, 86)

In an unlawful homicide a killing can be either intentional or unintentional. As a matter of fact, in a criminal homicide the killing may be either with malice aforethought or without malice. Now, if a killing is accompanied by malice aforethought, then that criminal or unlawful killing is murder. But if there is no malice involved, if there is no malice, then the unlawful killing is manslaughter. So the prime distinction to make between murder and manslaughter is the presence or absence of malice aforethought. I will repeat that. The unlawful killing of one human being by another with malice aforethought is murder. The unlawful killing of one human being by another without malice aforethought is manslaughter.

To make a determination as to whether an unlawful killing is murder or manslaughter, then we must look at all of the circumstances which precede or attend a killing. The person doing the killing may intend that death result from his act but the actual intention to kill is not the distinction that I am emphasizing for you now. An intentional killing may be either murder or manslaughter. So I reiterate, in order to determine whether an unlawful killing is murder or manslaughter, you have to consider the circumstances which precede the killing, you have to consider the circumstances that attend the killing, you must look at the act of the killer to determine the presence or the absence of malice. So let us consider, then, the instance in which an unlawful killing is done intentionally.

Now, malice aforethought may be implied from such an intent unless the circumstances are such as to reduce the crime to manslaughter. So once more I say, because the distinction is an important one, the difference between murder and manslaughter is the presence or the absence of malice.

Where an unlawful killing is intentional or purposeful, there may be circumstances which will rebut the presumption of malice and reduce the character of that unlawful

killing from murder to manslaughter, and I will speak of those circumstances again which rebut the presumption of malice but first I think we should consider the expression "malice aforethought," since malice is an essential ingredient of the crime of murder.

Malice here is not used in a technical sense. Malice includes not only those motives which may spring from anger, hatred or revenge in a killer, but from any other unlawful or unjustifiable motive that such a person may harbor. When a killing is shown to have been committed without justification and as a result of a deliberate act on the part of a defendant, then it is proved sufficiently to have been done with malice aforethought. But whether a killing is actually committed with malice aforethought is determined from the nature and the quality of the act which attends the killing, because that is the only way to decide what reveals the state of the heart and the mind of the person who does the killing.

If the circumstances attending a killing disclose that the death flows from a purposeful, selfish, wrongful motive as distinguished from the frailty of human nature, then there is malice aforethought. When a killing is caused by the intentional use of a deadly weapon, malice may be inferred, unless by the circumstances the jury considers that it has been disproved.

The evidence must tie the weapon to the defendant. It must place him at the scene of the crime and it must establish that the use of that weapon was intentional and that the intent was formed before the act. So remember, malice aforethought is an essential ingredient of the crime of murder. It is not an ingredient of the crime of manslaughter.

(Tr. 9–90 through 9–94)

Now, the fact that a killing is accomplished intentionally does not necessarily make it murder. An intentional killing does carry with it the presumption of malice aforethought but the circumstances which precede and accompany the intentional killing may be such as to rebut the presumption of malice and reduce the crime, therefore, to manslaughter.

(Tr. 9–95, 96)

If you should find that there was no deliberate premeditation but that Cynthia Hartford was killed by Thomas McInerney who caused her death with malice aforethought, if you should find that beyond a reasonable doubt but should find no deliberate premeditation, then you would be warranted in finding Mr. McInerney guilty of murder in the second degree.

(Tr. 9–98)

There may be an intentional killing of another human being where the circumstances which precede the killing and attend it are such that the law takes the element of human frailty into consideration and reduces the crime from murder to manslaughter. If, for example, a person should kill in the heat of passion which is sudden and which is occasioned by a reasonable and great provocation, then even though that person has a design and a purpose to kill, human frailty comes into the picture and the killing is designated as manslaughter, not as murder.

(Tr. 9–100–101)

If a man is assaulted with great violence and he is taken with a sudden impulse of anger and there is no time for him to reflect coolly and during that time he attacks and kills his assailant, then the killing is regarded as done in the heat of blood. There is no malice with respect to a killing of that nature and he is guilty, at most, of the crime of manslaughter.

(Tr. 9–102)

I stated additionally that you may make reasonable, logical inferences which flow from the facts that you find from the evidence.

(Tr. 9–127)

## SUPPLEMENTAL INSTRUCTIONS

I stated to you that there is no burden resting upon the defendant in a case of this nature; that the defendant has a constitutional right to remain silent. He need not say one word. He need not take the wit-

ness stand and testify under oath. And if he does not choose to take the witness stand, no inference of guilt may be drawn from that choice that he has made.

(Tr. 9–130)

I then stated that you had to look at all of the circumstances which precede or attend the killing to determine whether there was malice aforethought accompanying a particular killing. I said that the person who does the killing may intend that death result from his act but the actual intention to kill is not necessarily the difference between the two because an intended killing could be either murder or manslaughter, and I reiterated that you would have to consider the circumstances preceding and attending the killing, look at the act itself and the circumstances preceding it and surrounding it to determine first whether or not there was malice. If there was malice aforethought, you are dealing with murder, either murder in the first or murder in the second degree. If there is no malice, then you are dealing in the case of an unlawful killing with manslaughter.

(Tr. 134)

I stated that when a killing is shown to have been committed without justification and as a result of a deliberate act, it is proved sufficiently to have been done with malice aforethought.

I quote directly from my charge: Whether a killing is committed with malice aforethought is determined from the nature and the quality of the act which attends the killing as it tends to reveal the state of the mind and the heart of the killer. If the circumstances disclose that the death flowed from a purposeful, selfish, wrongful motive as distinguished from frailty of humanity, then there is malice aforethought and you are dealing with murder, you are not dealing with manslaughter.

So I ask you to remember the primary principle with respect to this case. Malice aforethought is an essential ingredient of the crime of murder but it is not an ingredient of the crime of manslaughter.

I stated to you that if a killing is caused by the intentional use of a deadly weapon, malice could be inferred unless by the circumstances surrounding the case malice is disproved.

(Tr. 9–135, 136)

To warrant a finding of guilty of murder in the second degree, the Commonwealth must have established beyond a reasonable doubt that Cynthia Hartford was killed, that Cynthia Hartford was killed by the defendant Thomas McInerney, that Mr. McInerney caused her death with malice aforethought but that there was no deliberate premeditation.

(Tr. 9–140, 141)