DENNIS M. DEJOINVILLE vs. COMMONWEALTH.

Suffolk.   May 7, 1980. — August 4, 1980.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Error, Writ of.   Practice, Criminal,* Presumptions and burden of proof,
  Instructions to jury.   *Homicide.   Malice.   Due Process of Law,*
  Presumptions and burden of proof.

A defendant's failure during his trial and appeal to raise a claim that the
  judge erred in instructing the jury with respect to "presumed intent"
  did not preclude him from raising it on a petition for a writ of error
  where none of the cases on the issue decided prior to the defendant's
  appeal provided sufficient guidance so that he could be said to have
  had a genuine opportunity to raise the claim at that time.  [247-251]
At the trial of a defendant charged with murder in the second degree, the
  judge erred in instructing the jury that a person "is presumed to have
  intended the natural or probable consequences of his voluntary acts
  . . . in the absence of evidence to the contrary."  [251-254]

PETITION filed in the Supreme Judicial Court for the
county of Suffolk on December 21, 1978.

The case was reported by *Kaplan, J.*

*Ellen A. Howard* for the petitioner.

*Lynn Morrill Turcotte,* Assistant District Attorney, for
the Commonwealth.

LIACOS, J.  The petitioner, Dennis M. DeJoinville, was
convicted of murder in the second degree and arson by a
jury of the Superior Court in Worcester County on May 23,
1973.  He was sentenced on the murder indictment to life
imprisonment at the Massachusetts Correctional Institution
at Walpole and on the arson indictment to a term of three to
five years to be served concurrently.  The judgments were
affirmed by the Appeals Court on March 8, 1976.  *Com-
monwealth* v. *DeJoinville,* 4 Mass. App. Ct. 790 (1976).  A
petition for writ of error was filed in the county court on
December 21, 1978.  The case was reserved and reported

here without decision on the original petition and on a substitute petition for a writ of error filed May 22, 1979.

We briefly summarize the pertinent facts. The petitioner's uncle, Charles DeJoinville, died in a fire at his home on December 30, 1972. In a pretrial statement, which was admitted in evidence at trial, the petitioner admitted setting the fire. The petitioner testified at trial, however, that he had no recollection of his actions on the evening of December 30, 1972. There was testimony that the petitioner and his uncle had a good relationship, that they frequently spent time together, and that they had been drinking together for much of the day on which the fire occurred.

The petitioner's sole assignment of error relates to a portion of the judge's charge in which he instructed the jury that a person "is presumed to have intended the natural or probable consequences of his voluntary acts . . . in the absence of evidence to the contrary."[1] The petitioner con-

---

[1] The jurors were instructed:

"Any intentional killing of a human being without legal justification or excuse, with no extenuating circumstances sufficient to reduce it to manslaughter, is malicious within the meaning of that expression and is murder and not manslaughter.

"From a text we may state the following: It is a general rule that every man of sufficient mental capacity to know what he is doing is presumed to have intended the natural or probable consequences of his voluntary acts. This rule has repeatedly been applied in the criminal law and to a great variety of cases.

"If a man voluntarily and without any mistake as to the facts does an act which, according to the natural course of events, will probably injure another in a particular way, it will be presumed in the absence of evidence to the contrary that he intended such consequences.

"The word 'aforethought' in the expression 'malice aforethought' does not require deliberately premeditated malice or intention to do wrong. If the killing was intentional although the act followed the thought immediately without time for deliberation or reflection, and there was no legal justification, excuse or extenuation, the killing was with malice aforethought within the meaning of that very technical and somewhat misleading expression of the law.

"A killing may be malicious and consequently murder, even though the slayer did not wish to cause death.

"If a man intentionally and without legal justification uses force upon the body of another, a force that as used would probably do grievous harm to that other and will create a plain and strong likelihood that that

tends that this instruction denied him due process of law because it shifted the burden of proof on the issue of intent to him and relieved the Commonwealth of its burden of proving such element of the crime charged beyond a reasonable doubt. *Sandstrom* v. *Montana*, 442 U.S. 510 (1979).

The petitioner did not take an exception to any portion of the charge at trial, nor did he raise the issue he argues here in his appeal before the Appeals Court. *Commonwealth* v. *DeJoinville*, 4 Mass. App. Ct. 790 (1976). A writ of error cannot be used to review issues that could have been raised at trial and thereafter on appeal. *LeBlanc* v. *Commonwealth*, 363 Mass. 171, 173 (1973). This rule, however, "does not bar the petitioner from raising claims whose constitutional significance was not established until after the petitioner's trial and appeal." *Id.* at 173-174. See *Lannon* v. *Commonwealth*, 379 Mass. 786, 787-788 (1980).[2] Thus, prior to reaching the merits of the petitioner's claim, we must determine whether the constitutional theory upon which the petitioner now relies is a theory which was sufficiently developed at the time of the petitioner's trial[3] and appeal to afford the petitioner a genuine opportunity to raise his claim.

The plaintiff's claim that the "presumed intent" charge deprived him of due process of law is built, in part, upon principles enunciated in *In re Winship*, 397 U.S. 358, 364

---

other will die as a result, the act is malicious within the meaning of the law even though the doer of that act was indifferent as to whether death would result or wished or hoped that it would not."

[2] Where the petition for writ of error raises claims that could have been, or were, raised on direct appeal, our review will be limited to the "question whether there is a substantial risk that there has been a miscarriage of justice." *Gibson* v. *Commonwealth*, 377 Mass. 539, 541 (1979). See *Commonwealth* v. *Hughes*, 380 Mass. 596, 606 n.1 (1980) (Liacos, J., dissenting).

[3] The Commonwealth concedes that the petitioner's failure to take an exception at trial does not bar his claim. In cases tried prior to *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975), and *Commonwealth* v. *Rodriguez*, 370 Mass. 684 (1976), failure to take an exception will not preclude a defendant from raising possible *Mullaney* violations before this court. *Commonwealth* v. *Stokes*, 374 Mass. 583, 588 (1978).

(1970), and *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975);[4] and, in part, upon principles enunciated in *Morissette* v. *United States*, 342 U.S. 246 (1952), and *United States* v. *United States Gypsum Co.*, 438 U.S. 422 (1978).[5] The United States Supreme Court also relied upon the principles enunciated in these cases in holding unconstitutional a presumed intent charge similar to the charge at bar. *Sandstrom* v. *Montana*, 442 U.S. 510, 524 (1979).[6] The Court stated: "Because David Sandstrom's jury may have interpreted the judge's instruction as constituting either a burden-shifting presumption like that in *Mullaney*, or a conclusive presumption like those in *Morissette* and *United*

---

[4] In *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975), the defendant challenged a jury instruction to the effect that if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be implied unless the defendant proved by a preponderance of the evidence that he acted in the heat of passion on sudden provocation. *Id.* at 686. The Court held that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." *Id.* at 704. Accordingly, the Court concluded that the defendant was entitled to a new trial because the charge given unconstitutionally shifted the burden of proof to the defendant.

[5] In *United States* v. *United States Gypsum Co.*, 438 U.S. 422 (1978), defendants who were charged with criminal violations of the Sherman Act challenged the following instruction: "The law presumes that a person intends the necessary and natural consequences of his acts. Therefore, if the effect of the exchanges of pricing information was to raise, fix, maintain, and stabilize prices, then the parties to them are presumed, as a matter of law, to have intended that result." *Id.* at 430. After determining that the offense included the element of intent, the Court held, "a defendant's state of mind or intent is an element of a criminal antitrust offense which . . . cannot be taken from the trier of fact through reliance on a legal presumption of wrongful intent from proof of an effect on prices. Cf. *Morissette* v. *United States*, 342 U.S. 246, 274-275 (1952)." *United States Gypsum Co.*, *supra* at 435.

[6] Sandstrom was charged with "deliberate homicide" in that he purposely or knowingly caused the death of Annie Jessen. Mont. Rev. Codes Ann. § 45-5-102 (1978). "Sandstrom's jurors were told that '[t]he law presumes that a person intends the ordinary consequences of his voluntary acts.' They were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it." *Sandstrom* v. *Montana*, 442 U.S. 510, 515 (1979).

*States Gypsum Co.,* and because either interpretation would have deprived defendant of his right to the due process of law, we hold the instruction given in this case unconstitutional." *Sandstrom, supra.*

In reaching this result in *Sandstrom,* the Court discussed the interface between burden-shifting principles and conclusive presumption principles: "As in *Morissette* and *United States Gypsum Co.,* a conclusive presumption in this case would 'conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime,' and would 'invade [the] factfinding function' which in a criminal case the law assigns solely to the jury. . . . Upon finding proof of one element of the crime (causing death), and of facts insufficient to establish the second (the voluntariness and 'ordinary consequences' of defendant's action), Sandstrom's jurors could reasonably have concluded that they were directed to find against defendant on the element of intent. The State was thus not forced to prove 'beyond a reasonable doubt . . . . every fact necessary to constitute the crime . . . . charged,' 397 U.S., at 364, and defendant was deprived of his constitutional rights as explicated in *Winship.*" *Sandstrom, supra* at 523.

We believe in so far as the teaching of *Sandstrom* relative to a "presumed intent" charge draws upon not only the burden-shifting principles of *Winship* and *Mullaney,* but also the conclusive presumption principles of *Morissette* and *United States Gypsum Co.,* that the *Mullaney* decision alone does not, as the Commonwealth urges, provide a benchmark for determining whether the petitioner's claim is one "whose constitutional significance was not established until after the petitioner's trial and appeal." *LeBlanc, supra* at 173-174.[7] It is the *Sandstrom* case, decided June 18, 1979, which sets forth the constitutional theory upon

---

[7] We note also that *Mullaney* was not held to be retroactive until after DeJoinville's appeal was decided by the Appeals Court. See *Hankerson* v. *North Carolina,* 432 U.S. 233 (1977).

which the petitioner now relies. The first case decided by this court where we reversed the judgment of the trial court on the ground that a "presumed intent" charge denied the defendant due process of law was *Commonwealth v. Callahan*, 380 Mass. 821 (June 5, 1980).[8] While other cases decided by this court prior to *Sandstrom* provide some guidance on the issue, none of the cases decided prior to the petitioner's appeal on March 8, 1976, provides sufficient guidance so that the petitioner can be said to have had a genuine opportunity to raise his claim at that time. See, e.g., *Commonwealth v. Gagne*, 367 Mass. 519 (April 28, 1975), petition for habeas corpus denied sub nom. *Gagne v. Meachum*, 423 F. Supp. 1177 (D. Mass. November 10, 1976), *Gagne v. Commonwealth*, 376 Mass. 417 (June 19, 1978), petition for habeas corpus denied sub nom. *Gagne v. Meachum*, 460 F. Supp. 1213 (D. Mass. November 30, 1978), aff'd 602 F.2d 471 (1st Cir. July 31, 1979), cert. denied, 444 U.S. 992 (1980).[9] We, therefore, conclude that the petitioner's failure to raise the instant claim during his trial and appeal does not preclude him from raising the claim here. See *LeBlanc, supra* at 173-174. See also *Commonwealth v. Hughes, supra* at 606 n.1 (Liacos, J., dissenting, citing *Gibson v. Commonwealth*, 377 Mass. 539, 541 [1979]).

We now turn to the merits of the petitioner's claim. The petitioner first argues that the judge's charge,[10] like the

---

[8] *Callahan* relied on *Mullaney* and *Commonwealth v. Rodriguez*, 370 Mass. 684 (1976). The opinion in *Rodriguez* was released after that of the Appeals Court in *DeJoinville*.

[9] Cases decided subsequent to the petitioner's appeal include: *Commonwealth v. Hodge (No. 2)*, 380 Mass. 858 (June 12, 1980); *Commonwealth v. Fitzgerald*, 380 Mass. 840 (June 10, 1980); *Commonwealth v. Hughes*, 380 Mass. 596 (May 7, 1980); *Commonwealth v. Medina*, 380 Mass. 565, 577-579 (May 5, 1980); *Lannon v. Commonwealth*, 379 Mass. 786, 793 (February 8, 1980); *Gibson v. Commonwealth*, 377 Mass. 539, 542 (March 16, 1979); *Commonwealth v. Collins*, 374 Mass. 596, 600 n.2 (March 9, 1978); *Commonwealth v. McInerney*, 373 Mass. 136 (July 28, 1977), petition for habeas corpus denied sub nom. *McInerney v. Berman*, 473 F. Supp. 187 (D. Mass. July 27, 1979), aff'd 621 F.2d 20 (1st Cir. May 8, 1980); *Commonwealth v. Greene*, 372 Mass. 517 (May 6, 1977); *Commonwealth v. Johnson*, 372 Mass. 185 (March 18, 1977).

[10] See note 1, *supra*.

charge in *Sandstrom,* could have been viewed by the jury as establishing a conclusive presumption, "which testimony could not overthrow [and which would] effectively eliminate intent as an ingredient of the offense." *Sandstrom, supra* at 522, quoting from *Morissette, supra* at 275. Second, the petitioner argues that the judge's charge, like the *Sandstrom* charge, could have been viewed by the jury as establishing a mandatory presumption, "which, although not conclusive, had the effect of shifting the burden of persuasion to the defendant." *Sandstrom, supra* at 524.

We agree with the petitioner that a charge which the jury could reasonably have interpreted as establishing either a conclusive presumption[11] or a mandatory presumption[12] cannot stand. As the Court stated in *Sandstrom, supra,* "a conclusive presumption in this case would 'conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime,' and would 'invade [the] factfinding function' which in a criminal case the law assigns solely to the jury." *Sandstrom, supra* at 523, quoting from *Morissette, supra* at 275, and *United States Gypsum Co., supra* at 446. A mandatory presumption in this case would be constitutionally deficient because the jury "could have concluded that upon proof by the State of the slaying, and of additional facts not themselves establishing the element of intent, the burden was shifted to the defendant to prove that he lacked the requisite mental state. Such a presumption was found consti-

---

[11] In *McInerney* v. *Berman,* 473 F. Supp. 187, 188 (D. Mass. 1979), the court considered a "presumed intent" charge similar to the charge at bar. The court defined the term conclusive presumption as follows: "*Conclusive presumption.* An ultimate fact is presumed to be true upon proof of another fact, and no evidence, no matter how persuasive, can rebut it. An example is the presumption that a child of less than a specified age is unable to consent to sexual intercourse."

[12] The term mandatory presumption has been defined as follows: "*Mandatory presumption.* A jury is required to find an ultimate fact to be true upon proof of another fact unless they are otherwise persuaded by a preponderance of evidence offered in rebuttal." *McInerney* v. *Berman,* 473 F. Supp. at 188.

tutionally deficient in *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975)." *Sandstrom, supra* at 524. See *Commonwealth* v. *Callahan, supra* at 821-822.

However, there is no constitutional infirmity in a charge which creates only a permissive presumption, or as it is commonly termed, an inference.[13] "An inference of a necessary element of a crime from proof of another fact does not violate a defendant's constitutional rights if (1) the underlying fact is proved beyond a reasonable doubt, (2) the ultimate element of the crime is rationally related to the underlying fact, and (3) the burden remains on the prosecution to satisfy the finder of fact on the whole record as to every element of the crime charged beyond a reasonable doubt." *McInerney* v. *Berman,* 473 F. Supp. at 188, citing *County Court of Ulster County, N.Y.* v. *Allen,* 442 U.S. 140 (1979); *Barnes* v. *United States,* 412 U.S. 837 (1973). We have, in the past, upheld charges similar to the charge at bar where the jury were "permitted to find malice . . . ., not by virtue of any presumption of law but rather by the exercise of the jury's right and power to draw any reasonable, though not necessary, inference from all the circumstances of the homicide committed by the defendant." *Commonwealth* v. *McInerney,* 373 Mass. 136, 149-150 (1977). See, e.g., *Commonwealth* v. *Medina,* 380 Mass. 565 (1980); *Lannon* v. *Commonwealth,* 379 Mass. 786 (1980).

Our review of the charge as a whole (see *Commonwealth* v. *Ramey,* 368 Mass. 109, 113-114 [1975]) persuades us that the jury could have reasonably interpreted the judge's charge as creating a mandatory presumption.[14] DeJoinville's jurors

---

[13] The term inference has been defined as follows: "*Inference* (sometimes called permissive presumption). A jury may find an ultimate fact to be true upon proof of another fact if upon consideration of all the circumstances revealed by the evidence they are satisfied that in logic and common experience the ultimate fact is more likely than not to flow from the fact proved." *McInerney* v. *Berman,* 473 F. Supp. at 188.

[14] With respect to our concern that the jury may have so interpreted the charge, we note the following dialogue which may reflect some confusion on the part of the jury:

were not told that they were permitted to infer malice from all the circumstances, but rather they were instructed that, "[i]t is a general rule that every man of sufficient mental capacity to know what he is doing is *presumed to have intended the natural or probable consequences of his voluntary acts*" (emphasis added). The judge went on to state: "This rule has repeatedly been applied in the criminal law and to a great variety of cases. If a man voluntarily and without any mistake as to the facts does an act which, according to the natural course of events, will probably injure another in a particular way, *it will be presumed in the absence of evidence to the contrary that he intended such consequences*" (emphasis added). Because the jury may have interpreted the judge's instruction as constituting a burden-shifting presumption, and because this interpretation would have deprived the petitioner of due process of law, we hold the instruction given in this case unconstitutional. The Commonwealth makes no claim that the error involved was harmless beyond a reasonable doubt nor can we say, based on the record before us, that we are convinced beyond a reasonable doubt that this constitutional error was harmless. *Chapman* v. *California,* 386 U.S. 18, 22-24 (1967). *Commonwealth* v. *Garcia,* 379 Mass. 422, 441-442 (1980). But cf. *Commonwealth* v. *Garcia, supra* at 445 (Liacos, J., dissenting).

---

"THE CLERK: Mr. Foreman, has your jury agreed upon their verdicts?
THE FOREMAN: Yes, sir.
THE CLERK: Please turn the indictments and the photographs over to the Court Officer. (Court Officer hands papers to Clerk)
THE CLERK: Mr. Foreman, with respect to indictment no. 58114 presenting murder in the second degree against the defendant Dennis M. DeJoinville, does the jury find the defendant guilty or not guilty?
THE FOREMAN: Guilty.
THE CLERK: Guilty of what?
THE FOREMAN: Manslaughter. Is that what the charge is?
THE CLERK: The charge is murder in the second degree. Guilty as charged?
THE FOREMAN: Guilty as charged.
THE CLERK: May that verdict be recorded?
THE COURT: Yes."

Accordingly, the judgment on the indictment which charges the petitioner with murder in the second degree is reversed, the verdict is set aside, and the case is remanded to the Superior Court for a new trial. The judgment of conviction as to the arson indictment was not affected by the issues here discussed. It is affirmed.

*So ordered.*