COMMONWEALTH *vs.* TIMOTHY ALLEN COLLINS.

Middlesex. December 6, 1977. — March 9, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Practice, Criminal,* Charge to jury, Argument by prosecutor, Appeal. *Homicide. Self-Defense.*

A judge's instructions at a murder trial in which issues of reasonable provocation and self-defense were sufficiently raised by the evidence were constitutionally inadequate where the jury were not instructed that the Commonwealth had the burden of disproving self-defense or provocation beyond a reasonable doubt and where portions of the charge by implication placed on the defendant the burden of proof as to self-defense. [599-601]

INDICTMENT found and returned in the Superior Court on January 14, 1976.

The case was tried before *Nelson,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Susan J. Baronoff* for the defendant.

*James W. Sahakian,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.  After a jury trial in the Superior Court, the defendant, who had been indicted on a charge of murder in the first degree, was convicted of murder in the second degree. He appealed pursuant to G. L. c. 278, §§ 33A-33G. He argues that the judge's instructions to the jury were erroneous, particularly in their failure to place the burden of proof on the Commonwealth as to the issues of self-defense and reasonable provocation. The defendant also argues that excesses in the closing argument of the prosecutor were such as to require a new trial. His arguments for appellate relief are based on this court's powers under

G. L. c. 278, § 33E, since no objections or exceptions as to these issues were saved by the defendant at the trial.

We conclude that there must be a new trial for the defendant because the constitutional requirements of *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975), as to the necessity for jury instructions placing the burden of proof on the Commonwealth as to self-defense and reasonable provocation were not met.

The facts are as follows. On the evening of December 17, 1975, the defendant picked up the victim, Robert Leach, in Waltham while Leach was hitchhiking. The defendant agreed to drive him the short distance to his home at 17 Ash Street. Leach invited the defendant in for a drink, and they stopped at a liquor store to buy two six-packs of beer.

Shortly after they arrived at 17 Ash Street, Leach's brother stopped by. The three men had a few beers each (and got somewhat high), played records, and discussed girls, the military and other subjects. The defendant said that during this discussion Leach remarked that the defendant should be careful in Boston because he had been robbed at gunpoint there. Replying that he could protect himself, the defendant displayed a black switchblade knife and a sharp buck knife and showed how he used the buck knife to clean deer when he went hunting. The conversation then turned to music, and was friendly at all times.

On two or three occasions, Leach suggested that his brother leave in order to get some sleep before going to work the next day. Around midnight the defendant and Leach drove Leach's brother home to 28 McKenn Street, Waltham; the brother had forgotten his key and the defendant climbed a tree and entered through a kitchen window to let him in. After the men had another drink, the defendant returned to 17 Ash Street with Leach.

The Commonwealth could present no eyewitnesses to the events following the return of the defendant and Leach to 17 Ash Street. However, William Burns, Sr., who lived at 19 Ash Street and whose bedroom was located above Leach's kitchen, testified that he awoke about 1:30 A.M. on

December 18, heard someone say, "Help, Billy! Help," and then heard a thump. About five minutes later he saw a car leaving the driveway of 17 Ash Street. Not long afterward, Burns's son entered Leach's apartment and found Leach dead on the living room floor.

There was police testimony that Leach's body was found nude but draped with a kimono-type dressing gown; that blood was smeared from the bathroom across the kitchen floor to the living room, and was found on the bathroom, kitchen and living room walls and door jambs to heights up to six feet. More blood was found near the front door and on the door knob and door lock, at the other end of the living room from the body.

Medical witnesses testified that Leach had suffered twenty wounds, six of which were wounds on his left hand and arm, some of which may have been inflicted with a single thrust. The cause of death was attributed to multiple stab wounds to the body and chest, resulting in a massive loss of blood. A medical witness said he did not know which blow was struck first, yet thought it a "likely possibility" that it was a blow to the back of the neck, which would have had a disabling effect and made Leach "virtually helpless." He thought several head wounds and two chest wounds (one or both of which penetrated the heart) were antemortem, but regarded the wounds in the abdomen and testicle and across the throat as postmortem since they were surrounded by little blood.

There was testimony that at the time of episode the defendant was seventeen years old, five feet five inches to five feet eight inches tall, and weighed 150 to 160 pounds. The defendant testified that he was the victim of a homosexual attack by Leach, who was twenty-three or twenty-four years old, six feet one inch to six feet two inches tall and husky, weighing about 220 pounds; the defendant said that he killed Leach while defending himself against the attack. He testified at length as to the details of Leach's attack on him.

1. The evidence clearly raised self-defense and reasonable provocation as issues, and consequently jury instructions were required as to those factors. We conclude that the judge's charge to the jury as to the burden of proof on those issues was constitutionally inadequate.

Our reasoning can be summarized best by recapitulating our conclusions from our recent opinion in *Commonwealth v. Stokes, ante* 583 (1978). They are as follows.

(1) Where issues of reasonable provocation and self-defense are sufficiently raised by the evidence, the defendant is entitled to an instruction which places on the Commonwealth the burden of disproving these factors beyond a reasonable doubt. *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975). *Commonwealth* v. *Rodriguez,* 370 Mass. 684, 692 (1976) (self-defense). *Commonwealth* v. *Johnson,* 372 Mass. 185, 192 (1977) (provocation). *Commonwealth* v. *Greene,* 372 Mass. 517, 518-519 (1977) (provocation).

(2) *Mullaney* v. *Wilbur, supra,* has retroactive effect. *Hankerson* v. *North Carolina,* 432 U.S. 233, 240-244 (1977).

(3) Because the issue of burden of proof goes to the very heart of the truth-finding function, this court will review the constitutional adequacy of the instructions to the jury as to the burden of proof in any case where the evidence adequately raises the issues of self-defense or provocation, even though the defendant addressed no objections or exceptions to that issue.

(4) This court, in determining whether *Mullaney* requirements have been met by the charge, will not apply a narrow, mechanistic approach but will consider the import of the entire charge to the jury.

(5) Although *Mullaney* must be applied retroactively, this court will, as matter of State practice, bring more careful scrutiny to jury instructions which were given after the date of *Mullaney,* and its progeny, such as *Rodriguez, Johnson, Greene* and *Stokes.*

Applying these principles to the instant case, we note that the trial of this case took place after the date of *Mullaney,*

but before *Hankerson* or *Rodriguez.* We also consider the charge in its entirety. *Commonwealth* v. *Ramey,* 368 Mass. 109, 113-114 (1975). *Commonwealth* v. *Benders,* 361 Mass. 704, 707 (1972). *Commonwealth* v. *Redmond,* 357 Mass. 333, 342 (1970). Although the instructions in general terms placed the burden of proof on the Commonwealth, and also placed on the Commonwealth the specific burden of proving malice, at no time were the jury told that the Commonwealth had the burden of disproving self-defense or provocation beyond a reasonable doubt. This was the case, despite the then established principles of *Mullaney,* and despite a request for instructions by the defendant which asked for a *Mullaney*-type charge as to the burden of proof on reasonable provocation.[1]

Even more crucial in our consideration are the several areas of the charge which by implication place on the defendant the burden of proof as to self-defense. One statement of the judge imposed this burden specifically, as follows: "Now, in this case, there was, or you may find that there was evidence from which *the defendant seeks to establish that he, if he committed this killing, had justification — and he states that in terms of what we call self-defense*" (emphasis supplied). The instructions as a whole did not negate this incorrect direction or the several erroneous implications found elsewhere in the charge.[2]

---

[1] Strangely, defense counsel did not object or except to the failure to include the requested instruction in the charge. See part 3 of this opinion. We note further that the defendant also presented well-phrased requests for instructions based on *Commonwealth* v. *Kendrick,* 351 Mass. 203 (1966). Again, we fail to understand why appropriate objections and exceptions were not made when these requests were denied. Because a new trial must be had in any case, we see no necessity to discuss this aspect of the judge's charge.

[2] For example, at one point in the instructions the judge stated to the jury the traditional instruction that a person may be held to intend the natural and probable consequences of his conduct and that the jury might be warranted in inferring malice from the use of a deadly weapon. The words chosen by the judge came perilously close to establishing a pre-

The conclusion is inescapable that there must be a reversal of the conviction and that a new trial must be ordered.

2. Because a new trial is ordered, there is no necessity for us to address the defendant's other assignments of error. The matters raised are not likely to recur at a new trial. We do observe, as to the prosecutor's allegedly improper remarks in this closing argument, that his use of the term "animal," which the jury might well have inferred was a reference to the defendant, was clearly an impermissible excess.

3. As in *Commonwealth* v. *Shelley, ante* 466 (1978), and in many other recent cases, defense counsel must be criticised for his failure to record objections and exceptions. It is true that this court will sometimes afford relief, as in the instant case, despite the absence of objections and exceptions, in order to avoid injustice. See *Commonwealth* v. *Corcione*, 364 Mass. 611, 618 (1974); *Commonwwealth* v. *White*, 353 Mass. 409, 424 (1967) (exercise of review powers under G. L. c. 278, § 33E). See also *Commonwealth* v. *Leavy*, 369 Mass. 963 (1976); *Commonwealth* v. *Franks*, 365 Mass. 74, 76 (1974); *Commonwealth* v. *Concepcion*, 362 Mass. 653, 654 (1972); *Commonwealth* v. *Myers*, 356 Mass. 343, 347 (1969); *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967) (exercise of discretionary powers of review). Yet, the administration of criminal justice is badly served when serious allegations of error in trial or pre-trial rulings are asserted for the first time at the appellate level. Assisted by appropriate requests and objections, the trial judge frequently can correct and avoid potential error.

The failure of defense counsel here to press for a *Mullaney*-type instruction to the jury is illustrative. That case had been decided many months before the instant trial occurred. Counsel should have been aware of its significance; indeed, there is some indication in the record that he was.

sumption in favor of the Commonwealth which the defendant must overcome. Such presumptions residing in the State law give rise to the *Mullaney* and *Hankerson* holdings, and indicate the caution which is needed in phrasing such concepts.

In many instances it is difficult for this court to understand the inaction of trial counsel in cases where we are subsequently confronted with justifiably aggressive assertions by appellate counsel that reversible error occurred at the trial.[3]

> *Judgment reversed.*
> *Verdict set aside.*

---

[3] We observe that appellate counsel who appeared before us was not the trial counsel in this case.