COMMONWEALTH vs. JOSEPH N. CALLAHAN.

Suffolk. February 4, 1980. — June 5, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Practice, Criminal,* Capital case, Instructions to jury. *Homicide. Malice. Evidence,* Presumptions and burden of proof. *Insanity.*

At a murder trial, the judge erred in instructing the jury that the intentional use of a deadly weapon gave rise to a "presumption" of malice aforethought. [822-826]

At a murder trial, the judge did not err in instructing the jury regarding the consequences of a verdict of not guilty by reason of insanity even though such an instruction was not requested by the defendant or the jury, nor did he err in referring in the instruction to the specific minimum time periods during which the defendant might be confined for psychiatric observation and treatment as set forth in G. L. c. 123, § 16. [826-828]

INDICTMENT found and returned in the Superior Court on April 12, 1976.

The case was tried before *Tamburello,* J.

*Anthony M. Traini (Martin K. Leppo* with him) for the defendant.

*Philip T. Beauchesne,* Assistant District Attorney, for the Commonwealth.

QUIRICO, J. The defendant, Joseph N. Callahan, was indicted on April 12, 1976, for the murder of one Marian Reichle, and on December 21, 1976, he was convicted of her murder in the first degree. The defendant appeals under G. L. c. 278, §§ 33A-33G, and seeks a new trial based on the following alleged errors by the trial judge in: (1) admitting in evidence statements made by the defendant during a court-ordered psychiatric examination; (2) instructing the jury on the consequences of a verdict of not guilty by reason of insanity; (3) instructing the jury on the burden of proof;

(4) permitting certain prejudicial statements by the prosecutor in his closing argument; and (5) prematurely delivering to the jury a so called *Allen* or *Tuey-Rodriquez* charge. The defendant acknowledges that no objections or exceptions were taken on any of these points, but seeks relief based on the court's powers under G. L. c. 278, § 33E, to guard against the substantial risk of a miscarriage of justice. See *Commonwealth* v. *Cole, ante* 30, 36-37 (1980).

We find no error in any of the points raised by the defendant. However, in accordance with our duty to review the record independently, we find error which requires the granting of a new trial in the portion of the judge's charge to the jury relating to the "presumption" of malice aforethought arising from the intentional use of a deadly weapon.

1. *Instruction to the jury on the "presumption" of malice.* The judge instructed the jury that a presumption "is not evidence, but it's a rule which governs until sufficient evidence appears to the contrary." He later stated, concerning inferences, that the "jury is entitled to draw inferences which naturally, reasonably and logically result from facts found" by them beyond a reasonable doubt, and gave examples of such inferences.

The judge went on to instruct the jury on the elements of the crime of murder, including the element of malice. After properly defining malice, and distinguishing between "active" malice and malice "implied by the unlawful, unjustified killing itself," he went on to instruct the jury that a presumption of malice arises from the intentional use of a deadly weapon, as reprinted below.[1]

---

[1] "Our Supreme Court has said that where the killing is caused by the intentional use of a deadly weapon, there arises the presumption of malice aforethought, as that term has been used and understood in this state. The implication of malice arises in every case of intentional homicide. Where the fact of killing is proved by satisfactory evidence and there are no circumstances disclosed tending to show justification or excuse, there is nothing to rebut the natural presumption of malice. This rule is founded on the plain and obvious principle that a person must be presumed to intend to do that which he voluntarily and wilfully does in fact do, and that he must intend all the natural, probable and usual consequences of his own

This instruction is defective in two respects. First, the instruction has the effect of imposing a mandatory presumption of malice arising from the use of a deadly weapon, counter to the teaching of *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975), and *Commonwealth* v. *Rodriguez*, 370 Mass. 684 (1976). The statements, "there arises the presumption . . .," "[t]he implication of malice arises in every case . . .,: and "in the absence of all proof to the contrary there is nothing to rebut the presumption of malice," among others, point in this direction. Second, the statement that "[t]his rule is founded on the plain and obvious principle that a person must be presumed to intend to do that which he voluntarily and wilfully does in fact do, and that he must intend all the natural, probable and usual consequences of his own act," runs directly afoul of the same constitutional principle, as recently articulated in *Sandstrom* v. *Montana*, 442 U.S. 510 (1979). We discuss these points in order.

It is well settled that the existence of malice may be inferred from the intentional use of a deadly weapon. *Commonwealth* v. *Campbell*, 375 Mass. 308, 312 (1978), and cases cited. In *Commonwealth* v. *McInerney*, 373 Mass. 136 (1977), we considered a defendant's contention that the judge's instruction on this inference using the term "presumption of malice" offended due process of law by shifting the burden of proof with respect to malice onto the defendant. We found that contention unsupported by a fair reading of the charge in that case, which included alternating use of the terms "presumption" and "inference" in an interchangeable fashion, although we noted that such use of the words "often gives rise to problems which might be avoided by the more precise use of either one . . . ." We reiterated that "the process by which a jury are permitted to find

act. Therefore, when one person assails another violently with a dangerous weapon likely to kill and which does in fact destroy the life of the party assailed, the natural presumption is that he intended death or great bodily harm; and as there can be no presumption of any motive or legal excuse for such a cruel act, the consequences follow that in the absence of all proof to the contrary there is nothing to rebut the presumption of malice."

malice . . . is not by virtue of any presumption of law but rather by the exercise of the jury's right and power to draw any reasonable, though not necessary, inference from all the circumstances of the homicide . . .," *id.* at 149-150, but we held that the judge's occasional lapse into the use of the word "presumption," when he obviously meant "inference," did not undercut his careful and proper instructions both on the inference of malice and on the Commonwealth's burden of proof.

In *Gibson* v. *Commonwealth*, 377 Mass. 539, 542 (1979), we upheld a similar use of the word "presumption," where the judge inaccurately defined that word as synonymous with "inference," although we noted again that the use of the word "presumption" was objectionable, citing *Commonwealth* v. *Collins*, 374 Mass. 596, 600 n.2 (1978).

Most recently, in *Commonwealth* v. *Medina, ante* 565, 577-579 (1980), we examined a charge which included a single use of the word "presumption" in describing the inference of malice, pursuant to our duty under G. L. c. 278, § 33E. We termed the use of the word "regrettable," *id.* at 577, but found that error was avoided because the charge as a whole made clear the Commonwealth's burden of proof. In that case, as in *McInerney*, the word "presumption" was used in company with, and synonymously with, the word "inference," and the latter word was properly defined. It was therefore left clear, we held, that the Commonwealth bore the burden of proving malice, "and the defendant had no onus to disprove it." *Id.* at 578.

In the charge in the present case the word "presumption" was defined as having a mandatory effect, while "inferences" were described as permissibly drawn from the facts proved. The charge concerning the inference of malice used some form of the word "presumption" six times, and the word "inference" not at all. It was clearly stated that unless some evidence were introduced to the contrary, presumably by the defendant, the "implication" of malice was required to be drawn from the intentional use of a deadly weapon. This language clearly reflects the shifting of some burden

onto the defendant. See *Connolly* v. *Commonwealth*, 377 Mass. 527, 534 (1979). Such a shift of the burden of proof is clearly contrary to the constitutional requirement that the Commonwealth must prove every essential element of a crime beyond a reasonable doubt. *Sandstrom* v. *Montana*, 442 U.S. 510 (1979). *Commonwealth* v. *Rodriguez*, 370 Mass. 684 (1976). *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975).

As to the second point, in the footnote cited above in *Commonwealth* v. *Collins*, 374 Mass. 596, 600 n.2 (1978), we noted that "the traditional instruction that a person may be held to intend the natural and probable consequences of his conduct" must not be phrased so as to establish a presumption in favor of the Commonwealth which the defendant must overcome. The importance of this caution was made clear by the recent Supreme Court decision in *Sandstrom* v. *Montana*, 442 U.S. 510 (1979), in which such an instruction was held to be reversible error because of the possibility that a reasonable juror could interpret it to relieve the prosecution of some portion of its constitutional burden of proof. The present instruction, which states that a person "must" be presumed to intend both his acts and the consequences therefrom, is error of similar dimension, particularly when, as here, it comes sandwiched in the middle of an erroneous instruction on the inference of malice. While there is but a small difference between "must" and "may," we cannot, consistent with our special duty under § 33E, overlook aspects of a jury instruction which may have the effect of infecting the charge as a whole with error of constitutional dimension.

This case was tried in December, 1976, well after the decisions in *Mullaney* v. *Wilbur* and *Commonwealth* v. *Rodriguez*, and the standard we apply to the charge is accordingly stricter than that applied to cases tried before those decisions. *Connolly, supra* at 530. *Commonwealth* v. *Stokes*, 374 Mass. 583, 591 (1978). We re-emphasize, however, that the expectations upon counsel to draw the judge's attention to burden of proof issues will also be correspondingly greater. *Commonwealth* v. *Medina, ante* 565, 577

n.5 (1980). In the present case, trial counsel failed to bring this issue to the judge's attention in any way, although the case was tried about five months after the *Rodriguez* decision which made its importance clear.[2] See *Collins, supra* at 601-602.

Because we order a new trial on the grounds stated above, we need not reach those issues raised by the defendant which are unlikely to arise again at the new trial. These include the other alleged defects in the instruction on burden of proof, the allegedly prejudicial statements by the prosecutor in closing argument, and the alleged premature delivery of the *Rodriguez* charge. The statements made by the defendant to Dr. Stephen G. Cronin in the course of the latter's examination of him by court order under G. L. c. 123, § 15, should be treated as far as possible in accordance with our decision in *Blaisdell* v. *Commonwealth*, 372 Mass. 753 (1977). We discuss briefly the defendant's contentions relative to the judge's instruction on the consequences of a verdict of not guilty by reason of insanity.

2. *Instructions to the jury on the consequences of a verdict of not guilty by reason of insanity.* The defendant argues, based on the decision of this court in *Commonwealth* v. *Mutina*, 366 Mass. 810 (1975), that the judge's instructions to the jury regarding the consequences of a verdict of not guilty by reason of insanity constituted reversible error. His attack is two-pronged. First, he argues that the mere giving of a *Mutina* instruction, absent a request for it by either the defendant or the jury, constitutes reversible error, because it would interject the subject of postverdict consequences into the jury's deliberations, citing *Commonwealth* v. *Burke*, 373 Mass. 569 (1977), and *Commonwealth* v. *Ferreira*, 373 Mass. 116 (1977). Second, he argues that the instruction given was faulty because it made mention of specific minimum time periods during which the defendant might be confined for psychiatric observation and treatment.

---

[2] We note that counsel on this appeal was not trial counsel.

The first contention is answered by the statement in *Mutina* that "[o]n balance . . . we believe it is best to entrust jurors with a knowledge of the consequences of a verdict of not guilty by reason of insanity." *Mutina, supra* at 821.[3] The statement in that decision that a defendant who requests such an instruction is "entitled" to one, and that the instruction "shall also be given on the request of the jury, if the defendant does not object thereto," does not limit the giving of the instruction to those circumstances, nor prevent a judge from giving such an instruction on his own initiative, where the issue is fairly raised and the defendant does not object. *Id.* at 823 n.12. The defendant's counsel at trial made it clear that he expected the judge to charge the jury in accordance with *Mutina.* Such a charge was given, and was not objected to. There was no error.

We find no error in the content of the judge's charge on this issue. The *Mutina* case does not prescribe any particular wording to be used in instructing a jury on this subject, but requires that in certain circumstances an instruction be given which fairly informs the jury of the possible consequences of a verdict of not guilty by reason of insanity. These consequences are governed by the procedures set forth in G. L. c. 123, § 16, which permits an initial observation period, a motion for commitment by the district attorney, a possible initial period of commitment, and, upon reevaluation, possible additional periods of commitment. See *Commonwealth* v. *Killelea,* 370 Mass. 638, 647-648 (1976); *Commonwealth* v. *Mutina,* 366 Mass. 810, 825-826 (1975) (Quirico, J., dissenting).

It is not necessary that a judge refer in his charge to the specific time periods set forth in the statute. He cannot, of course, predict the outcome or the ultimate length of com-

---

[3] The *Mutina* opinion continued, in a footnote, to state that "[t]his result is in accord with that reached . . . in *Lyles* v. *United States,* 254 F.2d 725 (D.C. Cir. 1957), cert. den., 356 U.S. 961 (1958), cert. den., 362 U.S. 943 (1960), cert. den., 368 U.S. 992 (1962), which *required that such an instruction be given unless objected to by the defendant*" (emphasis added). *Commonwealth* v. *Mutina,* 366 Mass. 810, 821 n.9 (1975).

mitment in a particular case, since this will depend on the evidence presented at the time of periodic re-evaluations of a committed person. *Commonwealth* v. *McColl,* 375 Mass. 316, 320 (1978). The judge in this case fairly and accurately instructed the jury in accordance with the provisions of G. L. c. 123, § 16, and the *Mutina* decision.

*Judgment reversed.*

*Verdict set aside.*