## COMMONWEALTH vs. LEROY CHASSON.

Norfolk. December 2, 1980. — March 18, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

*Homicide. Evidence*, Relevancy and materiality, Cross-examination. *Practice, Criminal*, Judicial discretion, Opening statement, Instructions to jury, Appeal, Capital case. *Self-Defense.*

The judge at a murder trial did not abuse his discretion in permitting the victim's mother to testify even though none of her testimony was essential to the Commonwealth's case. [185-186]

There was no merit to a defendant's contention that a prosecutor acted improperly in stating in his opening to the jury certain anticipated testimony by a witness who did not thereafter testify as expected, where the prosecutor was fully warranted in anticipating the testimony as he did and the defendant himself admitted to making substantially the statement that the witness was expected to attribute to him. [186]

At a murder trial in which the defendant claimed that he had picked up a knife which fell to the ground in the course of a scuffle in a city park and which had not been in his possession at the outset of the fight and that, after he had stabbed the victims in self-defense, he had thrown the knife out of an automobile as he was leaving the park, the judge did not err in excluding from evidence two knives which had been found in the park two and a half weeks and a month and a half, respectively, after the stabbings where there was evidence that, soon after the stabbings, the police had conducted three separate searches of the park, one of which was particularly exhaustive, looking for a knife or other sharp instrument and had found none. [186-187]

At a murder trial, no error was shown in the exclusion of certain questions on cross-examination of three Commonwealth witnesses where the subject of two of the questions was adequately developed in other questioning and where the relevancy of the third question was not made apparent. [187]

At a murder trial, there was no error in the judge's instruction on self-defense [188]; nor in his instructions on deliberate premeditation [188].

At a murder trial, language in the judge's charge concerning intent, although at best obscure, could not, when considered as part of the entire charge in the context of the case, reasonably have been understood

by the jury as shifting the burden of proof to the defendant and therefore did not create a constitutionally impermissible presumption. [188-193]

A defendant convicted of murder in the first degree was not entitled to relief under G. L. c. 278, § 33E, where there was no prejudicial error in his trial and where evidence showed that he had calculatingly attacked one person, stabbed two bystanders against whom he had no grievance, and then fled the jurisdiction rather than surrender to the police as a person who acted in self-defense might be expected to do. [193-194]

INDICTMENTS found and returned in the Superior Court on September 8, 1977.

The cases were tried before *McGuire, J.*

*Robert L. Sheketoff* for the defendant.

*Charles J. Hely,* Assistant District Attorney, for the Commonwealth.

WILKINS, J.  The defendant appeals from his conviction of murder in the first degree of one Paul Melody and his conviction of assault and battery by means of a dangerous weapon, on one Robert Hayward. We affirm the convictions, and, as to the murder conviction, we have performed our duty under G. L. c. 278, § 33E, and conclude that neither a new trial is warranted nor the entry of a verdict of a lesser degree of guilt.

We outline the evidence in general.  The defendant stabbed Melody and Hayward in Pageant Park in Quincy on a warm night in August, 1977.  There were a number of people in their twenties present at a gathering in the park, where they were drinking beer or other alcoholic beverages. One of these people was Kevin Racette against whom the defendant had a grievance.  The defendant, driven there by a friend, came to the park and spoke with some members of the group.  He left and returned about twenty minutes later.  The defendant drew Racette aside and hit him in the face.  A scuffle developed.  The defendant had a knife in his hand, and there was evidence that would have warranted the jury to conclude that the defendant arrived at the park with that knife.  Several witnesses saw the defendant "punch" Melody, who it soon became apparent had received

the serious cuts from which he died shortly afterward. The defendant stabbed Hayward twice in the kidney area when Hayward attempted to intervene. The defendant was driven away from the park. He was arrested in Maine a week later. A knife was found near where he was arrested.

The defendant testified at considerable variance with this evidence. He admitted that he returned to the park to attack Racette but claimed that he did not bring a knife with him. He said that, after he punched Racette, people came after him and that, in the melee, he picked up a knife from the ground and tried to defend himself. He said that he had the knife in his hand when he got into the car to leave the park but that, as the car backed out of the parking lot, he threw the knife out of the window.

With this brief background, we consider the various points raised by the defendant's appeal, which has been brought through counsel other than his trial counsel. Some of the points argued were the subject of objection below. Others were not.

1. The judge did not abuse his discretion in permitting the victim's mother to testify. At the defendant's request, the judge held a bench conference to determine what the witness was to testify about. Her testimony covers less than three pages of the transcript and no prejudice appears in that testimony apart from the possible prejudice produced by reason of the witness being the victim's mother. The defendant did not object to any question on the ground of relevancy or materiality. The Commonwealth was entitled to introduce relevant evidence through this witness, even though none of her testimony was essential to the Commonwealth's case. See *Commonwealth* v. *Chung,* 378 Mass. 451, 452 n.1 (1979); *Commonwealth* v. *Nassar,* 354 Mass. 249, 257-258 (1968), cert. denied, 393 U.S. 1039 (1969). Testimony from a victim's close relative might have a prejudicial effect on the jury. The judge was well aware of that risk and controlled the scope of the prosecutor's questions. Where the testimony of a close relative is redundant and of minimum materiality and where there is a reasonable pros-

pect that the jury would be prejudiced, we would find no fault with a determination to exclude such evidence. It is, of course, within the power of prosecutors to avoid the possibility of prejudice simply by not presenting the witness. Here, however, the judge did not abuse his discretion in permitting Melody's mother to testify.

2. The claim that, in his opening to the jury, the prosecutor acted improperly in stating certain anticipated testimony is without substance. There was no exception taken on this point at any time, and it is presented to us for consideration pursuant to our duty under G. L. c. 278, § 33E. The record, expanded on motion of the Commonwealth, shows that the prosecutor was fully warranted in anticipating the witness's testimony as he did. It is true that the witness did not testify as expected. However, the defendant himself admitted to making substantially the same statement as it was expected the witness would attribute to the defendant.

3. The defendant claims reversible error in the exclusion from evidence of two knives. The first was a small steak knife found sticking into the underside of the pavilion roof at Pageant Field, approximately two and a half weeks after the stabbings. The second was a folding jackknife with a corrosion spotted blade found close to a month and a half after the stabbings, lying against the edge of the raised cement floor of the pavilion area. Tests revealed traces of either human or animal blood on the steak knife and no blood traces on the jackknife.

The defendant argued for the admissibility of the knives on the ground that they supported the theory that the defendant did not use a knife already in his possession at the time of the stabbings but that he picked up a knife which fell to the ground during the fight and later threw it out of the car as he was leaving the park. He also argued that the knives supported the theory that there were knives present during the incident other than the one the defendant wielded. After an extensive voir dire, the judge ruled that the knives were inadmissible.

The evidence at the voir dire showed that, soon after the stabbings, police conducted three separate searches of the pavilion area where the two knives were later found. The third search in particular was exhaustive, involving ten or twelve police officers and thirty to forty assistants who swept the area three times in a closely knit formation in search of a knife or other sharp instrument. In none of the searches was any knife found. Additional evidence indicated that the pavilion was a picnic area and was used by large numbers of people in the late summer.

Whether evidence is legally relevant is a question which is generally left to the discretion of the trial judge. *Commonwealth* v. *Watkins,* 375 Mass. 472, 491 (1978). *Commonwealth* v. *Burke,* 339 Mass. 521, 533-534 (1959). W.B. Leach & P.J. Liacos, Massachusetts Evidence 283 (4th ed. 1967). The proximity to the crime in point of time is an element which the judge in his discretion may consider in viewing the probative value of evidence. *Commonwealth* v. *Watkins, supra. Aldrich* v. *Aldrich,* 215 Mass. 164, 168 (1913). *Commonwealth* v. *Berger,* 9 Mass. App. Ct. 814 (1980).

The defendant offered no evidence linking the particular knives to the stabbing incident other than their presence in the park two and a half weeks and a month and a half, respectively, after the stabbings. We think that this lack of linking evidence, together with what was in the circumstances a significant passage of time, provided sufficient grounds for the judge in his discretion to exclude them as lacking probative value.

4. There was no error in the exclusion of questions asked on cross-examination of three Commonwealth witnesses. In two instances, the subject was adequately developed in other questioning. In the third instance, the witness was asked whether she had a conversation, just before the victims were stabbed, about what she thought might happen. The relevancy of what she thought or what was said about what she thought was not apparent, and defense counsel made no attempt to make it apparent. The judge did not abuse his discretion in excluding these three questions.

5. There is no merit to the defendant's claim that the judge's charge on self-defense was inadequate. He contends that the judge should have made explicit reference to specific facts on which the defendant based his self-defense argument. The judge is not bound to instruct in the exact language of particular requests for instructions. *Commonwealth* v. *Edmonds,* 365 Mass. 496, 506 (1974). He need not instruct on every subsidiary fact and possible inference. *Commonwealth* v. *Therrien,* 371 Mass. 203, 206 (1976). Reading the instructions as a whole, they were not misleading, and they fairly permitted the jury to consider the defendant's self-defense contention. *Commonwealth* v. *Shaffer,* 367 Mass. 508, 513 (1975). *Commonwealth* v. *Benders,* 361 Mass. 704, 707 (1972).

6. The defendant challenges the adequacy of the judge's charge on deliberate premeditation. Because there was no objection to the charge in this respect, we consider the matter only under G. L. c. 278, § 33E. There was no error in any event. Deliberate premeditation was clearly set forth as a separate element which had to be proved in addition to malice aforethought in order to support a verdict of murder in the first degree. The judge's definition of deliberate premeditation as "the prior formation of a purpose to kill" was consistent with other formulations in our opinions. See *Commonwealth* v. *Blaikie,* 375 Mass. 601, 605 (1978); *Commonwealth* v. *McLaughlin,* 352 Mass. 218, 230, cert. denied, 389 U.S. 916 (1967). We have never required that any specific form of words be spoken.[1]

7. The defendant argues that the judge's charge eliminated intent as an ingredient of the offense by creating a conclusive presumption that the defendant intended to kill

---

[1] The defendant suggests that the judge erred in failing to instruct that intoxication could render a person mentally incapable of premeditation. *Commonwealth* v. *Cobb,* 379 Mass. 456, 466-467, vacated on other grounds sub nom. *Massachusetts* v. *Hurley,* 449 U.S. 809 (1980). No such instruction was required where the defendant did not rely on this theory, did not request an instruction based on it, and the evidence did not warrant the giving of such an instruction.

with malice aforethought and deliberate premeditation. He reads the charge as improperly telling the jury that the law presumes that a person intends the ordinary and natural consequences of his acts. Trial counsel did not object to the judge's charge in this respect.

As we have noted, this case is before us for review under G. L. c. 278, § 33E. Under § 33E, even in the absence of an objection to a charge, we have reviewed defendants' claims that particular charges unconstitutionally misstated the degree of proof required of the Commonwealth. See *Commonwealth v. Callahan,* 380 Mass. 821, 822 (1980); *Commonwealth v. Collins,* 374 Mass. 596, 597, 599 (1978).[2] We have said that, if the constitutional principles on which a claim is based had been developed at the time of the jury charge, we would bring greater expectations to the judge's charge and would expect more of counsel as well in raising an appropriate objection. See *Commonwealth v. Callahan,* 380 Mass. 821, 825 (1980); *Commonwealth v. Medina,* 380 Mass. 565, 577 n.5 (1980); *Commonwealth v. Collins,* 374 Mass. 596, 599 (1978). In practice, however, we have not visited on a defendant, in a direct appeal, his counsel's failure to object to a constitutionally deficient charge concerning the degree of proof required of the Commonwealth. The problem presented by the jury charge, as claimed before us, was anticipated to some degree by opin-

---

[2] In the absence of objection, the standard of review under § 33E is broader than the standard of review in other circumstances. See *Commonwealth v. Cole,* 380 Mass. 30, 38 (1980). In cases not reviewed under § 33E, the test on direct appeal is whether there is "'a substantial risk of a miscarriage of justice.'" *Commonwealth v. Hughes,* 380 Mass. 596, 601 (1980). In such a case, the fact that defects of the type claimed in a charge had been disclosed by our previous opinions and counsel made no relevant objection to the charge might suggest that the defects in the charge were not thought to be critical. *Id.*

On a writ of error seeking postconviction relief, we would also apply the "substantial risk of a miscarriage of justice" standard (*Gibson v. Commonwealth,* 377 Mass. 539, 541 [1979]) but would not permit a writ of error to raise a claim whose constitutional significance was developed before a defendant's trial or appeal (*DeJoinville v. Commonwealth,* 381 Mass. 246, 248 [1980]).

ions which came down before the trial,[3] but the specific point argued was not fully dealt with in any opinion of this court until *Commonwealth* v. *Callahan*, 380 Mass. 821 (June 5, 1980). Moreover, *United States* v. *United States Gypsum Co.*, 438 U.S. 422 (June 29, 1978), and *Sandstrom* v. *Montana*, 442 U.S. 510 (June 18, 1979), were decided after the May, 1978, trial in this case. It is the *Sandstrom* opinion that sets forth the theory on which the defendant relies. See *De-Joinville* v. *Commonwealth*, 381 Mass. 246, 250 (1980).

We have reversed murder convictions where the judge charged in effect that a person was presumed to have intended the natural or probable consequences of his voluntary acts. See *Commonwealth* v. *Callahan*, 380 Mass. 821, 824-825 (1980); *DeJoinville* v. *Commonwealth*, 381 Mass. 246, 254-255 (1980) (postconviction relief). We will consider a charge as a whole, however, to see whether the effect of an erroneous instruction was mitigated by other language in the charge. See, e.g., *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 844-846 (1980); *Commonwealth* v. *Hughes*, 380 Mass. 596, 602-603 (1980); *Commonwealth* v. *Medina*, 380 Mass. 565, 577-578 (1980); *Gibson* v. *Commonwealth*, 377 Mass. 539, 541-543 (1979); *Commonwealth* v. *McInerney*,

---

[3] Prior to the defendant's trial in May, 1978, we had had occasion to deal with arguments challenging references to presumptions, as opposed to reasonable inferences, in jury charges concerning the proof of a case against a criminal defendant. See, e.g., *Commonwealth* v. *McInerney*, 373 Mass. 136, 149-150 (July 28, 1977); *Commonwealth* v. *Johnson*, 372 Mass. 185, 192 (March 18, 1977). Approximately two months before trial, we specifically noted that a judge must exercise caution in phrasing references to conclusions that a jury might properly draw from a defendant's conduct. See *Commonwealth* v. *Collins*, 374 Mass. 596, 600 n.2 (March 9, 1978), in which we said: "[A]t one point in the instructions the judge stated to the jury the traditional instruction that a person may be held to intend the natural and probable consequences of his conduct and that the jury might be warranted in inferring malice from the use of a deadly weapon. The words chosen by the judge came perilously close to establishing a presumption in favor of the Commonwealth which the defendant must overcome. Such presumptions residing in the State law give rise to the *Mullaney* [v. *Wilbur*, 421 U.S. 684 (1975),] and *Hankerson* [v. *North Carolina*, 432 U.S. 233 (1977),] holdings, and indicate the caution which is needed in phrasing such concepts."

373 Mass. 136, 150-151 (1977). This court, in conducting a G. L. c. 278, § 33E, review, has also considered whether a constitutionally deficient charge was nevertheless harmless error. See *Commonwealth* v. *Garcia*, 379 Mass. 422, 441-442 (1980). Cf. *Commonwealth* v. *Hughes*, 380 Mass. 596, 601 (1980) (review under the "substantial risk of a miscarriage of justice" standard).

We come then to analyze the judge's charge which we summarize in pertinent part. The judge charged that the defendant "is presumed to be innocent until he is proven guilty beyond a reasonable doubt on all the essential elements of the crimes charged." He then expanded on the presumption of innocence and the burden of proof placed on the Commonwealth. He next charged extensively, in unexceptionable language, on the meaning of reasonable doubt. He defined assault and battery in language that the defendant does not challenge.[4]

The judge read from G. L. c. 265, § 1, distinguishing between murder in the first degree and murder in the second degree. He then discussed intent in the following language:

"So we have the words that must be discussed and their legal meanings explained to you; and even though the word does not appear in the statute I am going to charge you on intent, the word, 'intent,' because one is responsible for acts that he intends to do; and yet, because of our very nature as men and women, no one can be sure of what is in the mind of another person. Your intention, of course, is that which lies within the recesses of your mind. So how do we find intention?

"It is rather simple. When one does an unlawful act he is by the law presumed to have intended to do it and to have

---

[4] The charge on assault and battery had a bearing on each of the indictments before the jury. A conviction of assault and battery requires a finding of an intentional striking of the victim. *Commonwealth* v. *Campbell*, 352 Mass. 387, 397 (1967). As applied to the case before the jury, the question of an intentional striking was not a paramount issue because the defendant in effect conceded that he struck the victims with a knife but argued that he acted in self-defense or at least on reasonable provocation.

intended its ordinary and natural consequences on the ground that these must have been within his contemplation, if he is a sane man and acts with the deliberation which ought to govern men in the conduct of their affairs. So much for intent."

The judge next charged on the definition of murder in the first degree, murder in the second degree, and manslaughter. He said that malice means "a killing done with the intent to inflict serious injury without legal justification or mitigating circumstances." He further charged twice that "[m]alice in murder means a knowledge of such circumstances that according to common experience there is a plain and strong likelihood that death will follow a contemplated act." He charged on deliberate premeditation. He added that "[t]he law permits the jury to infer the existence of malice from the fact of an intentional killing, coupled with an implied negation of any excuse or justification." This language permitted an inference of malice, but did not presume malice, from an intentional killing. The judge concluded with a charge on voluntary manslaughter and self-defense. The matter of self-defense was crucial to the defendant's contention at trial, both in his own testimony and in his counsel's argument to the jury. The charge on self-defense in no way involved any permissible inference or presumption concerning the defendant's intention.

We return then to the specific portion of the judge's charge on intent to which the defendant objects. It is repeated in the margin.[5] This is not a straightforward charge of the character with which we have been concerned recently: that a person is presumed to intend the natural and probable consequences of his acts. See *DeJoinville* v. *Commonwealth, supra; Commonwealth* v. *Callahan, supra.* The instruction refers not to all acts but only to

---

[5] "When one does an unlawful act he is by the law presumed to have intended to do it and to have intended its ordinary and natural consequences on the ground that these must have been within his contemplation, if he is a sane man and acts with the deliberation which ought to govern men in the conduct of their affairs. So much for intent."

*unlawful* acts. For this charge to have any application, the jury would have had to have determined, following other portions of the judge's charge, that the defendant's acts were unlawful. Moreover, whatever the presumption described by the judge meant, he said that it applied only if the defendant acted "with the deliberation which ought to govern men in the conduct of their affairs." Consequently, the defendant was to be held to the ordinary and natural consequences of his unlawful conduct only if the jury found that he was acting with reasonable deliberation. This limitation substantially negated the stated presumption and opened up the question of the defendant's state of mind for determination by the jury according to other portions of the judge's charge.

The judge's charge in its challenged portion was hardly a picture of clarity. It was at best obscure. It may in fact have told the jury nothing which could be of assistance to them. It differs from the erroneous but intelligible charges concerning mandatory presumptions which we have found constitutionally deficient. Because the jury found deliberate premeditation on a proper charge on that question, the possibility is substantially mitigated that the challenged language improperly influenced the jury in arriving at its verdict. Considered as part of the entire charge in the context of this case, the challenged language could not reasonably have been understood by the jury, if it was understandable at all, as shifting the burden of proof from the Commonwealth or as creating a constitutionally impermissible presumption.[6]

8. Relief under G. L. c. 278, § 33E, is not appropriate in this case. We have found no prejudicial error in any of the legal points advanced on appeal. The defendant makes no separate argument that we should direct the entry of a verdict that the defendant was guilty of a lesser offense. This was not the "typical" drunken brawl in which someone sud-

---

[6] In any event, the charge had no bearing on the defendant's conviction of assault and battery with a dangerous weapon on the victim who survived.

denly and impulsively pulled a knife. In such a case, a conviction of murder in the first degree might not be the expected one. The incident here had no benign origin. The defendant testified that he sought out Racette to "punch him out" because Racette had "ripped off" a close friend of the defendant while in prison. The defendant calculatingly attacked one person, knifed two bystanders against whom he had no grievance, did not surrender to the police as a person who acted in self-defense might be expected to do, and fled the jurisdiction. The conviction of murder in the first degree should stand.

*Judgments affirmed.*