Commonwealth *vs.* Daniel Liakos.

Essex.    April 16, 1981. — June 10, 1981.

Present: Brown, Cutter, & Kass, JJ.

*Mayhem.   Assault and Battery.   Practice, Criminal,* Instructions to jury, Burden of proof, Verdict.

At a criminal trial, the judge's instructions permitting the jury to "infer that . . . [the defendant] intended all the natural and probable consequences which one . . . in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or . . . omitted by" him did not, in the context of the entire charge, create a conclusive presumption or confuse the jury about the burden of persuasion as to intent or the standard of proof as to each essential fact. [59-60]

At the trial of a defendant charged with armed assault in a dwelling, evidence that the victim was suddenly attacked by three intruders as soon as they entered his apartment and that his body was carved by a sharp weapon so that he required nearly 1,000 sutures was sufficient to warrant a finding that one of the intruders was armed when he entered the apartment although there was no direct evidence to that effect. [60-61]

At the trial of a defendant charged with armed assault in a dwelling, the judge adequately charged the jury on the necessity of proof by the Commonwealth that at least one of the three intruders who entered the victim's apartment was armed.  [61]

During polling of the jury at a criminal trial, the judge's colloquy with one of the jurors did not constitute a coercive inquiry or improper participation in the verdict but was merely a neutral, judicial attempt to obtain clarity in the juror's vote; the fact that the defendant's counsel raised no objection during or at the close of the polling process permitted an inference that the procedure did not appear coercive at the time.  [61-63]

Indictments found and returned in the Superior Court Department on May 29, 1979.

The cases were tried before *Adams,* J.

*Robert N. Goldstein* for the defendant.

*Lila Heideman,* Assistant District Attorney, for the Commonwealth.

CUTTER, J. A jury returned a verdict of guilty against Liakos on February 15, 1980, on charges of (1) armed assault in a dwelling and (2) mayhem. He was found not guilty of assault with intent to murder. From concurrent sentences of ten to twelve years at M.C.I., Walpole, he appealed. The jury would have been warranted in making the following findings.

On the early morning of May 18, 1979, shortly after midnight, Richard Dailey answered a knock on the door of an apartment in Danvers. He was struck by the opening door and knocked to the floor. He recognized Liakos as one of three assailants. They began to kick Dailey on the floor where he tried to protect himself by curling up and covering his face with his hands, which felt warm blood there. He tried to escape to the bathroom, but before he reached it he was knocked into a wall and became unconscious. When he again was conscious, he saw a large amount of blood on his body.

His roommate, Edwin Febonio, arrived and took Dailey to a hospital. While there, Dailey told Febonio and later told the police that the assault occurred on Warren Street and that he did not know who his assailants were. He later corrected his story and testified that the attack upon him was in the apartment, where the police found bloodstains throughout the premises. There was conflicting evidence about the reasons for Dailey's inconsistent accounts of the assault upon him.

There also was evidence suggesting that Liakos had shown displeasure at the fact that Dailey had been "dating" Liakos's sister. After the assault on Dailey, a picture of the sister (formerly taped to the refrigerator in Dailey's apartment) was missing.

No weapon was received in evidence at trial. Dailey did not testify to observing any weapon in the possession of any assailant. The doctors at the hospital worked over him for

five hours to repair multiple wounds on various parts of Dailey's neck, forehead, face, back, and chest area. To cause such wounds, one doctor testified, would require a "very keen instrument, something [with] the sharpness of a razor blade or a very . . . carefully honed knife". Between 800 and 1,000 sutures were needed to close Dailey's wounds.

No requests for directed verdicts or required findings were filed in behalf of Liakos. Liakos did not take the stand in his own defense but called several witnesses who testified to his presence at his parents' house during the period when the attack upon Dailey took place. No objection was made to the trial judge's instructions, except with respect to an additional instruction which the trial judge at once gave. Other evidence is stated below in discussing the contentions of Liakos's counsel.

1. Despite the absence of any relevant objection to the charge, Liakos's counsel now contends that it was error for the judge to charge that "it is reasonable to infer that persons ordinarily intend all the natural and probable . . . consequences of their acts knowingly done or . . . omitted. So, unless the evidence . . . leads you to a different . . . conclusion, you may infer that . . . [Liakos] intended all the natural and probable consequences which one . . . in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or . . . omitted by" him. The judge had previously explained that inferences must be based on facts proved beyond a reasonable doubt, must be consistent with each other and with other facts, and that intent may be, and usually must be, proved by circumstantial evidence. There is no merit to Liakos's contention that this charge created a conclusive presumption. There was no "burden shifting presumption," of the type held improper in *Sandstrom* v. *Montana,* 442 U.S. 510, 524 (1979), and *DeJoinville* v. *Commonwealth,* 381 Mass. 246, 253 (1980), created by this instruction. The charge, especially when considered as a whole, permitted the jurors to determine intent by "exercise of the jury's right and power to draw any reasonable, though not

necessary, inference from all the circumstances". See Mr. Justice Quirico's precise analysis in *Commonwealth* v. *McInerney*, 373 Mass. 136, 149-150 (1977), and *McInerney* v. *Berman*, 621 F.2d 20, 23-26 (1st Cir. 1980). See also *Commonwealth* v. *Medina*, 380 Mass. 565, 577-578 (1980); *Commonwealth* v. *Chasson*, 383 Mass. 183, 188-193 (1981). Compare *Commonwealth* v. *Callahan*, 380 Mass. 821, 824 (1980). As to the propriety of words like "unless the evidence in the case leads you to a different result" (used by the trial judge), see *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 842-846 (1980). In the present case, the judge, both at the beginning of his instructions and at the end, made it clear that in considering all the evidence, circumstantial or direct, the burden rested on the Commonwealth to prove to the jury beyond a reasonable doubt each fact necessary to establish the defendant's guilt. In the light of these firm instructions there was no occasion for confusion about where the burden of persuasion as to intent rested or the standard of proof as to each essential fact.

2. Again in the absence of any request for a required finding or any relevant objection to the judge's charge, Liakos's present counsel contends (a) that there was insufficient evidence that Liakos and his confederates were armed when they entered the apartment, and (b) that the judge gave an inadequate charge on the necessity of proof by the Commonwealth that at least one of the intruders was armed when they entered the apartment. There was ample evidence that the attack upon Dailey was sudden, immediate, furious, and savage. He was left bloody and unconscious, with his body greatly carved by a sharp weapon so that he required nearly 1,000 sutures. From the medical evidence of the special sharpness of the weapon needed to achieve the injuries, and the difficulty of inflicting so many wounds with a razor blade, it was unlikely that any such instrument would be found by the intruder on the premises. From the nature of Dailey's injuries, and the testimony about the continuous character of the attack upon Dailey, the jury could reasonably infer (although no such weapon was received in

evidence) that one of the intruders brought such a sharp instrument-weapon with him. See *Commonwealth* v. *Brown,* 367 Mass. 24, 27 (1975, testimony that a band of men entered an apartment suddenly and shot a victim eliminated any need of direct testimony that an intruder was armed when he entered); *Commonwealth* v. *Breese,* 10 Mass. App. Ct. 757, 758-759 (1980, where the display of a gun in the victim's premises shortly after the entry by intruders was properly relied on as proof of the defendant's knowledge that a joint participant was armed when he entered).

The judge at least twice (without objection at trial in behalf of Liakos to the adequacy of the instruction) sufficiently stated the offense as *"while being armed with a dangerous weapon entered a dwelling* house and while therein assaulted another with intent to commit a felony" (emphasis supplied). The judge explained in detail what the words "dangerous weapon," "dwelling," "assault," and "felony" meant, and gave clear instructions concerning "intent." Examination of the transcript reveals no aspect of the instructions as applied to the evidence which should have created any misunderstanding by any juror or have led to any substantial risk of a miscarriage of justice. See *Commonwealth* v. *Daigle,* 379 Mass. 541, 549 (1980); see also *Commonwealth* v. *Chasson,* 383 Mass. 183, 189 n.2 (1981). Compare and contrast *Commonwealth* v. *Niziolek,* 380 Mass. 513, 526-527 (1980), where there was a complete failure to define "malice", essentially a term of art in criminal law in relation to the crime of arson (as opposed to the ordinary meaning of "malice" in common English usage). No such difference between common usage and any special legal meaning exists with respect to the words "while being armed with a dangerous weapon."

3. During polling of the jury, an incident took place which Liakos's counsel now contends was error. As already stated, the jury had returned verdicts of guilty on the charges of (a) mayhem and (b) armed assault in a dwelling, and of not guilty on the charge of assault with intent to com-

mit murder. The colloquy which took place with the second juror questioned is set out in the margin.[1] The juror obviously became confused by the somewhat archaic ritual of the formal polling process, perhaps because of the split verdict (not guilty on assault with intent to commit murder and guilty on the other two counts) or by an attack of "stage fright," in being under a duty to speak up in the courtroom. See Mass.R.Crim.P. 27(d), 378 Mass. 897 (1979); *Commonwealth* v. *Fleming*, 360 Mass. 404, 408 (1971); *Williams* v. *United States*, 419 F.2d 740, 745-747 (D.C. Cir. 1969). See also *Commonwealth* v. *Rego*, 360 Mass. 385, 393 (1971). In any event, we perceive in the colloquy no coercive inquiry or improper participation by the trial judge, but only a

---

[1] "The Clerk: . . . what say you, on Indictment 100208, as to the defendant, wherein he is charged with armed assault in a dwelling house, guilty or not guilty?

Juror . . .: Not guilty.

The Clerk: Pardon?

Juror . . .: Not guilty — well, whatever it is —

The Clerk: 100208, wherein he is charged with armed assault in a dwelling house, guilty or not guilty?

Juror . . .: I can't remember to save my neck. Whatever is on the paper.

The Court: All right, sir. Do you agree with the verdict of guilty; is that what you're saying?

Juror . . .: Yes.

The Court: All right. On the armed assault in a dwelling house?

Juror . . .: On the mayhem, not guilty.

The Court: The mayhem verdict was guilty. Do you not agree with the verdict? The not guilty was on the assault with intent to murder. That was not guilty.

Mr. Nestor [Defense Counsel]: If Your Honor please, he has already said Not Guilty to mayhem just now.

The Court: I heard what he said, counsel.

Juror . . .: Not Guilty.

The Court: Not Guilty on assault with intent to murder. [The] juror . . . says yes.

Juror . . .: Yes.

The Court: Now, the mayhem charge, which was a jury finding of Guilty, do you agree or disagree?

Juror . . .: I agree.

The Court: You agree?

Juror . . .: Yes."

dispassionate, neutral, judicial effort to obtain clarity in the juror's vote rather than any attempt to affect his judgment. There was no intrusion into the jurors' function. Compare and contrast *Commonwealth* v. *Hebert,* 379 Mass. 752, 754 (1980). If Liakos's counsel had felt any doubts about the propriety of the colloquy or the polling process, he should have made an objection at the close of it or otherwise brought his concern to the attention of the judge, so that the judge, if in doubt about the jury's unanimity, could have sent the jury back to resume deliberations briefly under Mass.R.Crim.P. 27(d), already cited. That rule, of course, is essentially taken from Fed.R.Crim.P. 31(d). See *Amos* v. *United States,* 496 F.2d 1269, 1271-1273 (8th Cir.), cert. denied, 419 U.S. 896 (1974). As in the *Amos* case at 1273, the absence of objection by defense counsel or of action by the judge, sua sponte, "permits an inference that the procedure . . . did not appear coercive at the time," either to defense counsel or to the experienced trial judge.

*Judgments affirmed.*